FEDERATED DEPARTMENT STORES, INC., ET AL. *v.*
MOITIE ET AL.

No. 79–1517.  Argued March 30, 1981—Decided June 15, 1981

Rehnquist, J., delivered the opinion of the Court, in which Burger, C. J., and Stewart, White, Powell, and Stevens, JJ., joined. Blackmun, J., filed an opinion concurring in the judgment, in which Marshall, J., joined, *post*, p. 402. Brennan, J., filed a dissenting opinion, *post*, p. 404.

*Jerome I. Chapman* argued the cause for petitioners. With him on the briefs were *Abe Krash, Paul Fitting, Charles G. Miller, Eugene H. Gordon, John C. Grosz, Bernard Persky,* and *John Curran Ladd.*

*Jerrold N. Offstein* argued the cause and filed a brief for respondents.

Justice Rehnquist delivered the opinion of the Court.

The only question presented in this case is whether the Court of Appeals for the Ninth Circuit validly created an exception to the doctrine of res judicata. The court held that res judicata does not bar relitigation of an unappealed adverse judgment where, as here, other plaintiffs in similar actions against common defendants successfully appeal the judgments against them. We disagree with the view taken by the Court of Appeals for the Ninth Circuit and reverse.

I

In 1976 the United States brought an antitrust action against petitioners, owners of various department stores, alleging that they had violated § 1 of the Sherman Act, 15 U. S. C. § 1, by agreeing to fix the retail price of women's clothing sold in northern California. Seven parallel civil actions were subsequently filed by private plaintiffs seeking treble damages on behalf of proposed classes of retail purchasers, including that of respondent Moitie in state court (*Moitie I*) and respondent Brown (*Brown I*) in the United

States District Court for the Northern District of California. Each of these complaints tracked almost verbatim the allegations of the Government's complaint, though the *Moitie I* complaint referred solely to state law. All of the actions originally filed in the District Court were assigned to a single federal judge, and the *Moitie I* case was removed there on the basis of diversity of citizenship and federal-question jurisdiction. The District Court dismissed all of the actions "in their entirety" on the ground that plaintiffs had not alleged an "injury" to their "business or property" within the meaning of § 4 of the Clayton Act, 15 U. S. C. § 15. *Weinberg* v. *Federated Department Stores,* 426 F. Supp. 880 (1977).

Plaintiffs in five of the suits appealed that judgment to the Court of Appeals for the Ninth Circuit. The single counsel representing Moitie and Brown, however, chose not to appeal and instead refiled the two actions in state court, *Moitie II* and *Brown II*.[1] Although the complaints purported to raise only state-law claims, they made allegations similar to those made in the prior complaints, including that of the Government. Petitioners removed these new actions to the District Court for the Northern District of California and moved to have them dismissed on the ground of res judicata. In a decision rendered July 8, 1977, the District Court first denied respondents' motion to remand. It held that the complaints, though artfully couched in terms of state law, were "in many respects identical" with the prior complaints, and were thus properly removed to federal court because they raised "essentially federal law" claims. The court then concluded that because *Moitie II* and *Brown II* involved the "same parties, the same alleged offenses, and the same time periods" as *Moitie I* and *Brown I,* the doctrine of res judi-

---

[1] Petitioners have filed a supplemental memorandum with the Court indicating that *Moitie II* has been voluntarily dismissed, leaving *Brown II* as the subject of the petition.

cata required that they be dismissed. This time, Moitie and Brown appealed.

Pending that appeal, this Court on June 11, 1979, decided *Reiter* v. *Sonotone Corp.*, 442 U. S. 330, holding that retail purchasers can suffer an "injury" to their "business or property" as those terms are used in § 4 of the Clayton Act. On June 25, 1979, the Court of Appeals for the Ninth Circuit reversed and remanded the five cases which had been decided with *Moitie I* and *Brown I,* the cases that had been appealed, for further proceedings in light of *Reiter.*

When *Moitie II* and *Brown II* finally came before the Court of Appeals for the Ninth Circuit, the court reversed the decision of the District Court dismissing the cases. 611 F. 2d 1267.[2] Though the court recognized that a "strict application of the doctrine of *res judicata* would preclude our review of the instant decision," *id.*, at 1269, it refused to apply the doctrine to the facts of this case. It observed that the other five litigants in the *Weinberg* cases had successfully

---

[2] The Court of Appeals also affirmed the District Court's conclusion that *Brown II* was properly removed to federal court, reasoning that the claims presented were "federal in nature." We agree that at least some of the claims had a sufficient federal character to support removal. As one treatise puts it, courts "will not permit plaintiff to use artful pleading to close off defendant's right to a federal forum . . . [and] occasionally the removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization." 14 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3722, pp. 564–566 (1976) (citing cases) (footnote omitted). The District Court applied that settled principle to the facts of this case. After "an extensive review and analysis of the origins and substance of" the two *Brown* complaints, it found, and the Court of Appeals expressly agreed, that repondents had attempted to avoid removal jurisdiction by "artful[ly]" casting their "essentially federal law claims" as state-law claims. We will not question here that factual finding. See *Prospect Dairy, Inc.* v. *Dellwood Dairy Co.,* 237 F. Supp. 176 (NDNY 1964); *In re Wiring Device Antitrust Litigation,* 498 F. Supp. 79 (EDNY 1980); *Three J Farms, Inc.* v. *Alton Box Board Co.,* 1979–1 Trade Cases ¶ 62,423 (SC 1978), rev'd on other grounds, 609 F. 2d 112 (CA4 1979), cert. denied, 445 U. S. 911 (1980).

appealed the decision against them. It then asserted that "non-appealing parties may benefit from a reversal when their position is closely interwoven with that of appealing parties," *ibid.*, and concluded that "[b]ecause the instant dismissal rested on a case that has been effectively overruled," the doctrine of res judicata must give way to "public policy" and "simple justice." *Id.*, at 1269–1270. We granted certiorari, 449 U. S. 991 (1980), to consider the validity of the Court of Appeals' novel exception to the doctrine of res judicata.

## II

There is little to be added to the doctrine of res judicata as developed in the case law of this Court. A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. *Commissioner* v. *Sunnen,* 333 U. S. 591, 597 (1948); *Cromwell* v. *County of Sac,* 94 U. S. 351, 352–353 (1877). Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case. *Angel* v. *Bullington,* 330 U. S. 183, 187 (1947); *Chicot County Drainage District* v. *Baxter State Bank,* 308 U. S. 371 (1940); *Wilson's Executor* v. *Deen,* 121 U. S. 525, 534 (1887). As this Court explained in *Baltimore S.S. Co.* v. *Phillips,* 274 U. S. 316, 325 (1927), an "erroneous conclusion" reached by the court in the first suit does not deprive the defendants in the second action "of their right to rely upon the plea of *res judicata.* . . . A judgment merely voidable because based upon an erroneous view of the law is not open to collateral attack, but can be corrected only by a direct review and not by bringing another action upon the same cause [of action]." We have observed that "[t]he indulgence of a contrary view would result in creating elements of uncertainty and confusion and in undermining the conclusive character of judg-

ments, consequences which it was the very purpose of the doctrine of *res judicata* to avert." *Reed* v. *Allen,* 286 U. S. 191, 201 (1932).

In this case, the Court of Appeals conceded that the "strict application of the doctrine of *res judicata*" required that *Brown II* be dismissed. By that, the court presumably meant that the "technical elements" of res judicata had been satisfied, namely, that the decision in *Brown I* was a final judgment on the merits and involved the same claims and the same parties as *Brown II*.[3] The court, however, declined to dismiss *Brown II* because, in its view, it would be unfair to bar respondents from relitigating a claim so "closely interwoven" with that of the successfully appealing parties. We believe that such an unprecedented departure from accepted principles of res judicata is unwarranted. Indeed, the decision below is all but foreclosed by our prior case law.[4]

In *Reed* v. *Allen, supra,* this Court addressed the issue presented here. The case involved a dispute over the rights to property left in a will. *A* won an interpleader action for rents derived from the property and, while an appeal was pending, brought an ejectment action against the rival claimant *B*. On

---

[3] The dismissal for failure to state a claim under Federal Rule of Civil Procedure 12 (b) (6) is a "judgment on the merits." See *Angel* v. *Bullington,* 330 U. S. 183, 190 (1947); *Bell* v. *Hood,* 327 U. S. 678 (1946).

[4] The decision below also conflicts with those of other Courts of Appeals holding that an adverse judgment from which no appeal has been taken is res judicata and bars any future action on the same claim, even if an authoritative contrary judicial decision on the legal issues involved is subsequently rendered in another case. *E. g., National Association of Broadcasters* v. *FCC,* 180 U. S. App. D. C. 259, 265, 554 F. 2d 1118, 1124 (1976) ("It is the generally accepted rule in civil cases that where less than all of the several co-parties appeal from an adverse judgment, a reversal as to the parties appealing does not necessitate or justify a reversal as to the parties not appealing"); *Clouatre* v. *Houston Fire & Cas. Co.,* 229 F. 2d 596, 597–598 (CA5 1956); *Appleton Toy & Furniture Co.* v. *Lehman Co.,* 165 F. 2d 801, 802 (CA7 1948); *Ripperger* v. *A. C. Allyn & Co.,* 113 F. 2d 332, 333 (CA2), cert. denied, 311 U. S. 695 (1940).

the basis of the decree in the interpleader suit $A$ won the ejectment action. $B$ did not appeal this judgment, but prevailed on his earlier appeal from the interpleader decree and was awarded the rents which had been collected. When $B$ sought to bring an ejectment action against $A$, the latter pleaded res judicata, based on his previous successful ejectment action. This Court held that res judicata was available as a defense and that the property belonged to $A$:

> "The judgment in the ejectment action was final and not open to assault collaterally, but subject to impeachment only through some form of direct attack. The appellate court was limited to a review of the interpleader decree; and it is hardly necessary to say that jurisdiction to review one judgment gives an appellate court no power to reverse or modify another and independent judgment. If respondent, in addition to appealing from the [interpleader] decree, had appealed from the [ejectment] judgment, the appellate court, having both cases before it, might have afforded a remedy. . . . But this course respondent neglected to follow." *Id.*, at 198.

This Court's rigorous application of res judicata in *Reed*, to the point of leaving one party in possession and the other party entitled to the rents, makes clear that this Court recognizes no general equitable doctrine, such as that suggested by the Court of Appeals, which countenances an exception to the finality of a party's failure to appeal merely because his rights are "closely interwoven" with those of another party. Indeed, this case presents even more compelling reasons to apply the doctrine of res judicata than did *Reed*. Respondents here seek to be the windfall beneficiaries of an appellate reversal procured by other independent parties, who have no interest in respondents' case, not a reversal in interrelated cases procured, as in *Reed*, by the same affected party. Moreover, in contrast to *Reed*, where it was unclear why no appeal was taken, it is apparent that respondents here made a

calculated choice to forgo their appeals. See also *Ackermann* v. *United States,* 340 U. S. 193, 198 (1950) (holding that petitioners were not entitled to relief under Federal Rule of Civil Procedure 60 (b) when they made a "free, calculated, deliberate choic[e]" not to appeal).

The Court of Appeals also rested its opinion in part on what it viewed as "simple justice." But we do not see the grave injustice which would be done by the application of accepted principles of res judicata. "Simple justice" is achieved when a complex body of law developed over a period of years is evenhandedly applied. The doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply "no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata.*" *Heiser* v. *Woodruff,* 327 U. S. 726, 733 (1946). The Court of Appeals' reliance on "public policy" is similarly misplaced. This Court has long recognized that "[p]ublic policy dictates that there be an end of litigation; that those who have contested an issue shall be bound by the result of the contest, and that matters once tried shall be considered forever settled as between the parties." *Baldwin* v. *Traveling Men's Assn.,* 283 U. S. 522, 525 (1931). We have stressed that "[the] doctrine of *res judicata* is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts . . . ." *Hart Steel Co.* v. *Railroad Supply Co.,* 244 U. S. 294, 299 (1917). The language used by this Court half a century ago is even more compelling in view of today's crowded dockets:

> "The predicament in which respondent finds himself is of his own making . . . . [W]e cannot be expected, for his sole relief, to upset the general and well-established doctrine of *res judicata,* conceived in the light of the

maxim that the interest of the state requires that there be an end to litigation—a maxim which comports with common sense as well as public policy. And the mischief which would follow the establishment of precedent for so disregarding this salutary doctrine against prolonging strife would be greater than the benefit which would result from relieving some case of individual hardship." *Reed* v. *Allen,* 286 U. S., at 198–199.

Respondents make no serious effort to defend the decision of the Court of Appeals. They do not ask that the decision below be affirmed. Instead, they conclude that the "the writ of certiorari should be dismissed as improvidently granted." Brief for Respondents 31. In the alternative, they argue that "the district court's dismissal on grounds of res judicata should be reversed, and the district court directed to grant respondent's motion to remand to the California state court." *Ibid.* In their view, *Brown I* cannot be considered res judicata as to their *state*-law claims, since *Brown I* raised only federal-law claims and *Brown II* raised additional state-law claims not decided in *Brown I,* such as unfair competition, fraud, and restitution.

It is unnecessary for this Court to reach that issue. It is enough for our decision here that *Brown I* is res judicata as to respondents' federal-law claims. Accordingly, the judgment of the Court of Appeals is reversed, and the cause is remanded for proceedings consistent with this opinion.

*It is so ordered.*

JUSTICE BLACKMUN, with whom JUSTICE MARSHALL joins, concurring in the judgment.

While I agree with the result reached in this case, I write separately to state my views on two points.

First, I, for one, would not close the door upon the possibility that there are cases in which the doctrine of res judi-

cata must give way to what the Court of Appeals referred to as "overriding concerns of public policy and simple justice." 611 F. 2d 1267, 1269 (CA9 1980). Professor Moore has noted: "Just as res judicata is occasionally qualified by an overriding, competing principle of public policy, so occasionally it needs an equitable tempering." 1B J. Moore & T. Currier, Moore's Federal Practice ¶ 0.405 [12], p. 791 (1980) (footnote omitted). See also *Reed* v. *Allen,* 286 U. S. 191, 209 (1932) (Cardozo, J., joined by Brandeis and Stone, JJ., dissenting) ("A system of procedure is perverted from its proper function when it multiplies impediments to justice without the warrant of clear necessity"). But this case is clearly not one in which equity requires that the doctrine give way. Unlike the nonappealing party in *Reed,* respondents were not "caught in a mesh of procedural complexities." *Ibid.* Instead, they made a deliberate tactical decision not to appeal. Nor would public policy be served by making an exception to the doctrine in this case; to the contrary, there is a special need for strict application of res judicata in complex multiple party actions of this sort so as to discourage "break-away" litigation. Cf. *Reiter* v. *Sonotone Corp.,* 442 U. S. 330, 345 (1979). Finally, this is not a case "where the rights of appealing and non-appealing parties are so interwoven or dependent on each other as to require a reversal of the whole judgment when a part thereof is reversed." See *Ford Motor Credit Co.* v. *Uresti,* 581 S. W. 2d 298, 300 (Tex. Civ. App. 1979).*

---

*The Court of Appeals' reliance, 611 F. 2d 1267, 1269 (CA9 1980), on *Uresti; Kvenild* v. *Taylor,* 594 P. 2d 972 (Wyo. 1979); and *In re Estate of McDill,* 14 Cal. 3d 831, 537 P. 2d 874 (1975), appears to me to be clearly misplaced. Unlike those cases, this is not one in which the appealing and nonappealing parties made competing claims to a single piece of property, see *McDill,* or in which reversal only as to the appealing party would have unjustly left the nonappealing party liable, see *Kvenild,* or without recourse on his cross-claim, see *Uresti.*

Second, and in contrast, I would flatly hold that *Brown I* is res judicata as to respondents' state-law claims. Like the District Court, the Court of Appeals found that those state-law claims were simply disguised federal claims; since respondents have not cross-petitioned from that judgment, their argument that this case should be remanded to state court should be itself barred by res judicata. More important, even if the state and federal claims are distinct, respondents' failure to allege the state claims in *Brown I* manifestly bars their allegation in *Brown II*. The dismissal of *Brown I* is res judicata not only as to all claims respondents actually raised, but also as to all claims that could have been raised. See *Commissioner* v. *Sunnen,* 333 U. S. 591, 597 (1948); Restatement (Second) of Judgments § 61.1 (Tent. Draft No. 5, Mar. 10, 1978). Since there is no reason to believe that it was clear at the outset of this litigation that the District Court would have declined to exercise pendent jurisdiction over state claims, respondents were obligated to plead those claims if they wished to preserve them. See *id.,* § 61.1, Comment *e.* Because they did not do so, I would hold the claims barred.

JUSTICE BRENNAN, dissenting.

In its eagerness to correct the decision of the Court of Appeals for the Ninth Circuit, the Court today disregards statutory restrictions on federal-court jurisdiction, and, in the process, confuses rather than clarifies long-established principles of res judicata. I therefore respectfully dissent.

## I

Respondent Floyd R. Brown [1] filed this class action (*Brown II*) against petitioners in California state court. The com-

---

[1] Since the action by respondent Moitie has been voluntarily dismissed, the only remaining issues concern the claims of respondent Brown.

plaint stated four state-law causes of action: (1) fraud and deceit, (2) unfair business practices, (3) civil conspiracy, and (4) restitution. Plaintiffs' Complaint, ¶¶ 11–14, App. 99–101. It alleged "not less than $600" damages per class member, and in addition sought "appropriate multiple damages," exemplary and punitive damages, interest from date of injury, attorney's fees and costs, and other relief. *Id.*, at 101–102. *All four* of the causes of action rested wholly on California statutory or common law; *none* rested in any fashion on federal law.

Nonetheless, petitioners removed the suit to the United States District Court for the Northern District of California, where respondent Brown filed a motion to remand on the ground that his action raised no federal question within the meaning of 28 U. S. C. § 1441 (b). Respondent's motion was denied by the District Court, which stated that "[f]rom start to finish, plaintiffs have essentially alleged violations by defendants of federal antitrust laws." App. 192. The court reasoned that "[a]rtful pleading" by plaintiffs cannot "convert their essentially federal law claims into state law claims," and held that respondent's complaint was properly removed "because [it] concerned federal questions which could have been originally brought in Federal District Court without satisfying any minimum amount in controversy." *Ibid.* The court then dismissed the action, holding that, under the doctrine of res judicata, *Brown II* was barred by the adverse decision in an earlier suit in federal court (*Brown I*) involving "the same parties, the same alleged offenses, and the same time periods." *Ibid.*

The Court of Appeals affirmed the District Court's decision not to remand, stating that "[t]he court below correctly held that the claims presented were federal in nature." 611 F. 2d 1267, 1268 (CA9 1980) (memorandum on denial of reconsideration). However, the Court of Appeals reversed the District Court's order of dismissal, and remanded for trial.

## II

The provision authorizing removal of actions from state to federal courts on the basis of a federal question [2] is found in 28 U. S. C. § 1441 (b):

> "Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties."

Removability depends solely upon the nature of the plaintiff's complaint: an action may be removed to federal court only if a "right or immunity created by the Constitution or laws of the United States [constitutes] an element, and an essential one, of the plaintiff's cause of action." *Gully* v. *First National Bank in Meridian,* 299 U. S. 109, 112 (1936). An action arising under state law may not be removed solely because a federal right or immunity is raised as a defense. *Tennessee* v. *Union & Planters' Bank,* 152 U. S. 454 (1894).

An important corollary is that "the party who brings a suit is master to decide what law he will rely upon and therefore does determine whether he will bring a 'suit arising under' the . . . law[s] of the United States" by the allegations in his complaint. *The Fair* v. *Kohler Die & Specialty Co.,* 228 U. S. 22, 25 (1913); accord, *Great Northern R. Co.* v. *Alexander,* 246 U. S. 276, 282 (1918). Where the plaintiff's claim might

---

[2] As the District Court acknowledged, *Brown II* could not be removed on the basis of diversity of citizenship, because the amount in controversy did not exceed $10,000. App. 190. The court correctly noted, however, that the action could have been removed without regard to the amount in controversy, if it could have been brought as an original action in federal court without meeting any minimum amount in controversy. *Ibid.* Actions under the Clayton Act, 15 U. S. C. § 15, may be brought in federal court without regard to amount in controversy. See also Pub. L. 96–486, §§ 2 (a), 4, 94 Stat. 2369–2370, 28 U. S. C. § 1331 (1976 ed., Supp. IV), and note following § 1331 (repeal of minimum amount in controversy for federal-question cases pending as of date of enactment).

be brought under either federal or state law, the plaintiff is normally free to ignore the federal question and rest his claim solely on the state ground. If he does so, the defendant has no general right of removal. *Jones* v. *General Tire & Rubber Co.,* 541 F. 2d 660, 664–665 (CA7 1976); *La Chemise Lacoste* v. *Alligator Co.,* 506 F. 2d 339, 346 (CA3 1974), cert. denied, 421 U. S. 937 (1975); *Warner Bros. Records, Inc.* v. *R. A. Ridges Distributing Co.,* 475 F. 2d 262, 264 (CA10 1973); *Coditron Corp.* v. *AFA Protective Systems, Inc.,* 392 F. Supp. 158, 160 (SDNY 1975).

This corollary is well grounded in principles of federalism. So long as States retain authority to legislate in subject areas in which Congress has legislated without pre-empting the field, and so long as state courts remain the preferred forum for interpretation and enforcement of state law, plaintiffs must be permitted to proceed in state court under state law. It would do violence to state autonomy were defendants able to remove state claims to federal court merely because the plaintiff *could have* asserted a federal claim based on the same set of facts underlying his state claim. As this Court stated in *Shamrock Oil & Gas Corp.* v. *Sheets,* 313 U. S. 100, 108–109 (1941):

> "The power reserved to the states under the Constitution to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution. 'Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.' " (Quoting *Healy* v. *Ratta,* 292 U. S. 263, 270 (1934).)

The general rule that a plaintiff basing his claim solely on state law thereby avoids removal applies only where state substantive law has not been pre-empted by federal law.

"[W]here the plaintiff has a right to relief *either* under

federal law *or* under state law as an independent source of that right, the federal court on removal proceedings may not generally look beyond the face of the initial pleading in the state action to determine whether a federal question is presented. In certain areas, however, this either-or option is no longer available, for Congress has deemed that federal substantive law should altogether preempt and supplant state law. In such a case, where Congress has explicitly said that the exclusive source of a plaintiff's right to relief is to be federal law, it would be unacceptable to permit that very plaintiff, by the artful manipulation of the terms of a complaint, to defeat a clearly enunciated congressional objective." *Hearst Corp.* v. *Shopping Center Network, Inc.,* 307 F. Supp. 551, 556 (SDNY 1969) (emphasis in original) (citation omitted).

The federal court must therefore scrutinize the complaint in the removed case to determine whether the action, though ostensibly grounded solely on state law, is actually grounded on a claim in which federal law is the exclusive authority. See *Sheeran* v. *General Electric Co.,* 593 F. 2d 93, 96 (CA9), cert. denied, 444 U. S. 868 (1979); *North American Phillips Corp.* v. *Emery Air Freight Corp.,* 579 F. 2d 229, 233–234 (CA2 1978); *New York* v. *Local 144, Hotel Nursing Home and Allied Health Services Union,* 410 F. Supp. 225, 226–229 (SDNY 1976).[3]

---

[3] In this context, it is often said that a plaintiff may not "fraudulently" defeat removal by manipulation of the complaint. See, *e. g., Sheeran* v. *General Electric Co.,* 593 F. 2d, at 96; *Jones* v. *General Tire & Rubber Co.,* 541 F. 2d 660, 664–665 (CA7 1976); see also *Great Northern R. Co.* v. *Alexander,* 246 U. S. 276, 281, 282 (1918). Where, however, both state and federal laws would support a claim, it makes little sense to suggest that the plaintiff acts "fraudulently" if he chooses to proceed under state law in state court rather than under federal law in federal court. See *Romick* v. *Bekins Van & Storage Co.,* 197 F. 2d 369, 371 (CA5 1952).

This lawsuit concerns the area of antitrust in which federal laws have not displaced state law. See generally Mosk, State Antitrust Enforcement and Coordination with Federal Enforcement, 21 A. B. A. Antitrust Section 358, 361–368 (1962). Thus, respondent Brown had the option of proceeding under state or federal law, or both. So far as is apparent from the complaint, which was carefully limited to four California state-law causes of action, this case arises wholly without reference to federal law. Under settled principles of federal jurisdiction, therefore, respondent's lawsuit should not have been removed to federal court. See *Gully* v. *First National Bank in Meridian,* 299 U. S., at 113.

The Court today nonetheless sustains removal of this action on the ground that "at least some of the claims had a sufficient federal character to support removal." *Ante,* at 397, n. 2. I do not understand what the Court means by this. *Which* of the claims are federal in character? *Why* are the claims federal in character? In my view, they are all predicated solely on California law.[4] Certainly, none of them purports to state a claim under the federal antitrust laws, and the mere fact that plaintiffs might have chosen to proceed under the Clayton Act surely does not suffice to transmute their state claims into federal claims.

The Court relies on what it calls a "factual finding" by the District Court,[5] with which the Court of Appeals agreed, that "respondents had attempted to avoid removal jurisdiction by 'artful[ly]' casting their 'essentially federal law claims' as state-law claims." *Ibid.* But this amounts to no more than

---

[4] Indeed, the Court admits that the additional claims in *Brown II,* not included in *Brown I,* such as unfair competition, fraud, and restitution, are "state-law claims." *Ante,* at 402.

[5] The District Court did not consider this conclusion a "factual finding." It was included in a section of the District Court opinion devoted to legal analysis, not in the section entitled "Facts." Compare App. 187–190 with *id.,* at 190–192. In any event, a court's conclusion concerning the legal character of a complaint can hardly be considered a "factual finding."

a pejorative characterization of respondents' decision to proceed under state rather than federal law. "Artful" or not, respondents' complaints were not based on any claim of a federal right or immunity, and were not, therefore, removable.[6]

## III

Even assuming that this Court and the lower federal courts have jurisdiction to decide this case, however, I dissent from the Court's disposition of the res judicata issue. Having reached out to assume jurisdiction, the Court inexplicably recoils from deciding the case. The Court finds it "unnecessary" to reach the question of the res judicata effect of *Brown I* on respondents' "*state*-law claims." *Ante,* at 402 (emphasis in original). "It is enough for our decision here," the Court says, "that *Brown I* is res judicata as to respondents' federal-law claims." *Ibid. But respondents raised only state-law claims; respondents did not raise any federal-law claims.*

---

[6] The decisions cited by the Court in support of its approach, all from District Courts, are inapplicable. *In re Wiring Device Antitrust Litigation,* 498 F. Supp. 79 (EDNY 1980), and *Three J Farms, Inc.* v. *Alton Box Board Co.,* 1979–1 Trade Cases ¶ 62,423, p. 76,550 (SC 1978), rev'd on other grounds, 609 F. 2d 112 (CA4 1979), cert. denied, 445 U. S. 911 (1980), were cases in which the State itself had confined application of the state antitrust laws to purely intrastate commerce, thus leaving federal law the sole basis for suit. Similarly, *Prospect Dairy, Inc.* v. *Dellwood Dairy Co.,* 237 F. Supp. 176 (NDNY 1964), concerned a claim of an unfair labor practice, which is governed exclusively by federal law. See 29 U. S. C. § 187; *Teamsters* v. *Morton,* 377 U. S. 252 (1964).

Admittedly, some courts have not strictly observed the restrictions on removal jurisdiction. See, *e. g., In re Carter,* 618 F. 2d 1093, 1101 (CA5 1980), cert. denied *sub nom. Sheet Metal Workers* v. *Carter,* 450 U. S. 949 (1981). 14 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3722, pp. 564–566 (1976), reports that "occasionally the removal court will seek to determine whether the real nature of the claim is federal, regardless of plaintiff's characterization." (Footnote omitted.) Perusal of the cited decisions, however, reveals that most of them correctly confine this practice to areas of the law pre-empted by federal substantive law.

Thus, if the Court fails to decide the disposition of respondents' state-law claims, it decides nothing. And in doing so, the Court introduces the possibility—heretofore foreclosed by our decisions [7]—that unarticulated theories of recovery may survive an unconditional dismissal of the lawsuit.

Like JUSTICE BLACKMUN, I would hold that the dismissal of *Brown I* is res judicata not only as to every matter that was actually litigated, but also as to every ground or theory of recovery that might also have been presented. See *ante,* p. 402 (opinion concurring in judgment); 1B J. Moore & T. Currier, Moore's Federal Practice ¶ 0.410 [2], p. 1163 (1980). An unqualified dismissal on the merits of a substantial federal antitrust claim precludes relitigation of the same claim on a state-law theory. *Woods Exploration & Producing Co.* v. *Aluminum Co. of America,* 438 F. 2d 1286, 1312–1315 (CA5 1971), cert. denied, 404 U. S. 1047 (1972); *Ford Motor Co.* v. *Superior Court,* 35 Cal. App. 3d 676, 680, 110 Cal. Rptr. 59, 61–62 (1973); see Restatement (Second) of Judgments § 61.1, Reporter's Note to Illustration 10, Comment *e,* pp. 178–179 (Tent. Draft No. 5, Mar. 10, 1978). The Court's failure to acknowledge this basic principle can only create doubts and confusion where none were before, and may encourage litigants to split their causes of action, state from federal, in the hope that they might win a second day in court.

I therefore respectfully dissent, and would vacate the judgment of the Court of Appeals with instructions to remand to the District Court with instructions to remand to state court.

---

[7] See *Brown* v. *Felsen,* 442 U. S. 127, 131 (1979); *United States* v. *Munsingwear, Inc.,* 340 U. S. 36, 38 (1950); *Commissioner* v. *Sunnen,* 333 U. S. 591, 597 (1948); *Chicot County Drainage District* v. *Baxter State Bank,* 308 U. S. 371, 378 (1940); *Cromwell* v. *County of Sac,* 94 U. S. 351, 352–353 (1877).