Louis P. ALBENGA, Plaintiff,

v.

Benjamin WARD, et al., Defendants.

No. 82 Civ. 1115 (VLB).

United States District Court,
S.D. New York.

May 22, 1986.

Richard A. Dienst, Dienst & Cahn, New York City, for plaintiff.

Carol Matorin, Asst. Corp. Counsel, New York City, for defendants.

MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

I.

Plaintiff joined the New York City Police Department on June 5, 1968. Prior to that time he had served in the Marines in Vietnam. While in Vietnam he was wounded, sustaining shrapnel injury to his left upper arm. This wound caused damage to his radial nerve which resulted in a temporary weakness of his left wrist and hand. The wound healed and the weakness disappeared.

When plaintiff applied to the New York City Police Department he made full disclosure of his Vietnam injury. He was exam-

ined and found medically qualified to perform police duties. He was appointed. After serving a one-year probationary period, plaintiff was re-examined, found to be physically fit, and appointed to a permanent position.

Plaintiff served on the police force with distinction for ten years, during which time he experienced no ill effects and no loss of time from the war wound. It was, in fact, completely quiescent.

On October 3, 1978, while assisting an epileptic into an ambulance, plaintiff injured his neck and shoulder. He was treated for muscle strain and spasms at Columbia Presbyterian Hospital, advised to wear a cervical collar and released. After three weeks the pain in plaintiff's neck and shoulder subsided but he noted numbness, weakness and pain in his left arm and hand. His condition was diagnosed as cervicular radiculitis with radial nerve involvement.

Plaintiff remained out on sick leave from October 3, 1978 to December 26, 1978, returning to restricted duty on December 27, 1978. He applied for accident disability retirement on March 15, 1979.

Pursuant to the Administrative Code of the City of New York § B18–4.0, the police commissioner, on behalf of the board of trustees of the police pension fund, directed the medical board to examine plaintiff to determine his fitness to perform police duty. Following an examination of the plaintiff and review of his medical reports the medical board found plaintiff to be disabled due to radial nerve damage resulting from his Vietnam war injury. The medical board found that the disability was unrelated to the line of duty injury plaintiff sustained on October 3, 1978 and therefore recommended that plaintiff's accident disability retirement application be denied and that plaintiff be retired with an ordinary disability pension.

The board of trustees of the New York City Police Pension Fund is composed of representatives of the City and representatives of the various line organizations which represent the police officers. The City representatives have a total of six votes on the board, as do the representatives of line organizations.

The board of trustees considered plaintiff's application on September 25, 1979. The vote on his application for an accident disability pension resulted in a 6–6 tie. The vote on an application by the police commissioner that plaintiff be retired with an ordinary disability pension also resulted in a 6–6 tie. The police commissioner (through a deputy commissioner who was acting as chairman of the board of trustees) then directed that petitioner be retired on an ordinary disability pension.

An ordinary disability pension is at 50 percent of a pensioner's former salary. An accident disability pension, granted when a person is incapacitated "as a natural and proximate result of ... city-service," Administrative Code of the City of New York § B18–43.0, is at 75 percent of a pensioner's former salary.

Plaintiff commenced an Article 78 proceeding on November 28, 1979 seeking review of the board of trustees' denial of his application for an accident disability pension on the grounds that it was irrational, arbitrary and capricious and without any basis in fact or law. Justice Beverly Cohen of the Supreme Court, New York County, Special Term denied his petition for review on August 1, 1980. A divided appellate Division affirmed the Supreme Court, *Albenga v. McGuire*, 80 A.D.2d 813, 437 N.Y. S.2d 314 (App.Div. 1st Dept.1981). The Court of Appeals affirmed, *Albenga v. McGuire*, 54 N.Y.2d 923, 445 N.Y.S.2d 151, 429 N.E.2d 830 (1981).

Plaintiff filed this complaint pursuant to 42 U.S.C. § 1983, arguing that he was deprived of due process by the failure of the board of trustees to follow the procedures mandated by the Administrative Code of the City of New York § B18–13.0(b):

Every act of the board of trustees shall be by resolution which shall be adopted only by a vote of at least seven-twelfths of the whole number of votes authorized

to be cast by all of the members of such board.

Plaintiff contends that his retirement on ordinary disability by direction of the police commissioner was not by resolution and therefore was unconstitutional.

Both parties moved for summary judgment. On March 29, 1985 I orally granted plaintiff's motion, but then held that ruling in abeyance to consider further submissions concerning defendants' argument that plaintiff's claim was barred by *res judicata.*

## II.

■ The finding of the Medical Board that petitioner's disability was not related to his line of duty injury was clearly erroneous. To hold that an injury, totally asymptomatic for ten years, could suddenly, inexplicably become totally disabling defies common sense. Furthermore, as Justice Lupiano pointed out in his vigorous dissent from his colleagues in the Appellate Division, the medical records all supported the conclusion that the line of duty injury was at least one cause of plaintiff's disability. *See Albenga v. McGuire,* 80 A.D.2d 813, 814, 437 N.Y.S.2d 314, 315–16 (App. Div. 1st Dept.1981) (Lupiano, J., dissenting). The law in New York is that a line-of-duty injury that aggravates a preexisting condition or precipitates the development of a latent condition does constitute a proximate cause of disability for purposes of entitling an applicant to an accident disability pension. *Meyer v. McGuire,* 64 N.Y.2d 1152, 490 N.Y.S.2d 730, 480 N.E.2d 344 (1985); *Tobin v. Steisel,* 64 N.Y.2d 254, 485 N.Y.S.2d 730, 475 N.E.2d 101 (1985). In the absence of any other explanation for plaintiff's sudden disability, plaintiff's case was wrongly decided.

The practice of retiring an applicant on ordinary disability whenever the board of trustees is deadlocked on the question of the cause of disability is based on a long standing and in my opinion clearly erroneous, interpretation of the New York Court of Appeals opinion in *Matter of City of New York v. Schoeck,* 294 N.Y. 559, 63 N.E.2d 104 (1945).

In *Schoeck* the Court of Appeals held that when an applicant for a line-of-duty disability pension (in that case a fireman) is found to be physically disqualified from performing his duties by the medical board, the board of trustees of the department pension fund must act to accomplish his retirement. The court pointed out that such action was required by the governing regulations. The court went on to state that the board of trustees did have discretion in determining the cause of the disability and thereby fixing the amount of the retirement allowance but the statutory duty to retire an applicant found to be "disabled is not expressly qualified by any provision of the statute that performance of that duty must be simultaneous with a determination of the retirement allowance to be paid to him." *Schoeck,* 294 N.Y. at 569, 63 N.E.2d 104. The court reasoned that an applicant for a line-of-duty pension who had been determined by a medical board to be disabled would at a minimum be entitled to the lesser amount of an ordinary disability pension; it directed that Schoeck be retired and "that until the board of trustees *shall by resolution* 'determine the cause' of the respondent's disqualification and fix the amount of the respondent's retirement allowance the respondent shall be entitled to receive payment from the pension fund of an allowance of one half his salary ..." *Id.* at 570, 63 N.E.2d 104 (*emphasis added*).

The procedure adopted by both the police and fire department pension funds' boards of trustees pursuant to *Schoeck,* however, has been simply to retire applicants on ordinary disability pensions whenever the vote of the board of trustees is tied on applications for service-connected or line-of-duty disability pensions. Determinations as to the causation of the disability, which under *Schoeck* may be made at a later date, are in practice seldom if ever made at all. This procedure has been condoned by the New York courts.

The administrative code of New York City is the statute which created the board of trustees of the police pension fund. The administrative code explicitly states that *all* actions of the board of trustees shall be taken by resolution adopted by a seven-twelfths majority. The *Schoeck* court recognized that the board of trustees had a duty to determine *by resolution* the cause of Schoeck's disability.

■ The administrative code by its terms has provided for the creation of the board of trustees of the police pension fund; has specified its composition, and has defined the scope of its powers and the manner in which those powers are to be exercised. The composition of the board of trustees demonstrates a legislative concern that both the city and the members of the police department be represented. If the specified composition or procedures are unworkable because they lead to tie votes with respect to which the regulations make no provision, it is the duty of the legislature to amend the administrative code to solve the problem. An agency may not unilaterally adopt procedures not authorized by the legislation that created it, and a court has no power to sanction such a procedure, however expedient it may be.

In this case, the board of trustees has adopted a policy which allows it totally to abnegate its responsibility to determine by resolution the cause of an applicant's disability. Such a policy denies plaintiff herein, and all others similarly situated, the process due under the Administrative Code. If I could reach this issue, that is how I would rule. I do not reach this issue because I am constrained to grant defendant's motion for summary judgment on the ground that this action is barred by *res judicata.*

### III.

■ The Federal Full Faith and Credit Act, 28 U.S.C. § 1738, requires all federal courts to give preclusive effect to a state-court judgment whenever the courts of the state in which the judgment was rendered would do so. *Migra v. Warren City School District,* 465 U.S. 75, 81, 104 S.Ct. 892, 81, 79 L.Ed.2d 56 (1984); *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980). *See also Genova v. Town of Southampton,* 776 F.2d 1560, 1561 (2d Cir.1985). The question I must decide, therefore, is whether a New York State court would allow plaintiff to maintain this suit.

New York courts follow a transactional theory of *res judicata. Heimbach v. Chu,* 744 F.2d 11, 14 (2d Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 1842, 85 L.Ed.2d 141 (1985) (citing *Reilly v. Reid,* 45 N.Y.2d 24, 27–31, 407 N.Y.S.2d 645, 379 N.E.2d 172 (1978) ). This approach has been explicated by the New York Court of Appeals:

> We begin our analysis with the observation that, in deciding *res judicata* issues, we have moved to a more pragmatic test, which sees a claim or cause of action as "coterminous with the transaction regardless of the number of substantive theories or variant forms of relief * * * available to the plaintiff" (Restatement, Judgments 2d [Tent Draft No. 4, 1978], § 61, Comment a). Thus, in *Matter of Reilly v. Reid,* 45 N.Y.2d 24, 29, 407 N.Y.S.2d 645, 379 N.E.2d 172, we announced that, from the perspective of claim preclusion "[a] 'cause of action' may denote one of several separately stated claims in a pleading based on the same congeries of facts but related to different legal theories of recovery. A 'cause of action' may also denote a separately stated claim on the same congeries of facts, but for different legal relief. But even if there are variations in the facts alleged, or different relief is sought, the separately stated 'causes of action' may nevertheless be grounded on the same gravamen of the wrong upon which the action is brought". This holds true even when "several legal theories depend on different shadings of the facts, or would emphasize different elements of the facts or would call for different measures of liability or different kinds of relief" (Restatement, Judgments 2d [Tent Draft No. 5], § 61, Comment c).

For, what "factual grouping" constitutes a "transaction" or "series of transactions" depends on how "the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether * * * their treatment as a unit conforms to the parties' expectations or business understanding or usage" (Restatement, Judgments 2d [Tent Draft No. 1], § 61, cited as in accord with New York law in *Matter of Reilly v. Reid, supra,* p. 30, 407 N.Y.S.2d 645, 379 N.E.2d 172; Restatement, Judgments 2d [Tent Draft No. 5], § 61.1 [exemplification of general rule concerning splitting]).

*Smith v. Russell Sage College,* 54 N.Y.2d 185, 192–93, 445 N.Y.S.2d 68, 71, 429 N.E.2d 746, 749 (1981).

Plaintiff correctly points out that the issue presented in his federal action was not litigated in the state court proceedings, but that is of no consequence. If it could have been litigated there, and if it arises from the "same congeries of facts" he cannot maintain a separate suit in this court now.

▪ Plaintiff's complaint challenges the constitutionality of the procedure by which he was retired on ordinary disability. It was this same action by the board of trustees of the police pension fund that he previously challenged throughout the courts of the State of New York as being arbitrary and capricious. The claim now raised arose from the same set of facts as the claim litigated in the state courts.

Plaintiff argues that he could not have raised his current claim in his prior proceedings because the scope of review in an Article 78 proceeding is limited and damages are not obtainable. New York C.P. L.R. § 7803 provides:

The only questions that may be raised in a proceeding under this article are:

1. whether the body or officer failed to perform a duty enjoined upon it by law; or

2. whether the body or officer proceeded, is proceeding or is about to proceed without or in excess of jurisdiction; or

3. whether a determination was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion, including abuse of discretion as to the measure or mode of penalty or discipline imposed; or

4. whether a determination made as a result of a hearing held, and at which evidence was taken, pursuant to direction by law is, on the entire record, supported by substantial evidence.

It seems evident that the issue of whether the board of trustees violated plaintiff's right to due process by failing to follow the procedure mandated by the Administrative Code could have been raised under either subsections one, two or three of § 7803. An Article 78 proceeding is the proper vehicle in New York to determine whether a statute, ordinance or regulation has been applied in an unconstitutional manner. *Top Tile Bldg. Supply Corp. v. N.Y. State Tax Com'n,* 94 A.D.2d 885, 885, 463 N.Y. S.2d 558, 559 (App.Div. 3rd Dept.1983), appeal dismissed, 60 N.Y.2d 653, 467 N.Y. S.2d 572, 454 N.E.2d 1315 (Ct.App.1983) appeal dismissed 465 U.S. 1095, 104 S.Ct. 1582, 80 L.Ed.2d 116 (1984); *see Fulling v. Palumbo,* 21 N.Y.2d 30, 286 N.Y.S.2d 249, 233 N.E.2d 272 (1967) (court decided whether zoning ordinance was unconstitutional as applied to a particular property in an Article 78 proceeding.) Plaintiff's claim that he could not have raised his present argument in his prior state court proceedings is therefore incorrect.

Plaintiff contends that the line of cases which have approved the board of trustees' interpretation of *Schoeck* is incorrect and therefore subject to being overruled by a federal court based on federal constitutional principles. However, having committed the matter to the state courts for judicial review and having received final determinations from the Supreme Court, the Appellate Division and the Court of Appeals, he is now precluded by principles of *res judicata* from invoking the intervention of this court:

A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action. [*citations omitted*]. Nor are the res judicata consequences of a final, unappealed judgment on the merits altered by the fact that the judgment may have been wrong or rested on a legal principle subsequently overruled in another case.

*Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 2428, 69 L.Ed.2d 103 (1981) (*citations omitted*).

Plaintiff's case was, in my judgment, wrongly decided on both the facts and the law, and the result reached therein was inequitable.[1] My view of the equities, however, cannot justify a refusal to apply the principle of *res judicata* to plaintiff's claim:

The doctrine of res judicata serves vital public interests beyond any individual judge's ad hoc determination of the equities in a particular case. There is simply 'no principle of law or equity which sanctions the rejection by a federal court of the salutary principle of *res judicata.*'

*Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. at 401, 101 S.Ct. at 2429 (quoting *Heiser v. Woodruff,* 327 U.S. 726, 733, 66 S.Ct. 853, 856, 90 L.Ed. 970 (1946)).

I grant defendants' motion for summary judgment and deny plaintiff's motion for summary judgment.

SO ORDERED.

---

1. The facts of this case may be those which Judge Timbers anticipated in footnote 8 of *Basciano v. Herkimer,* 605 F.2d 605, 611 (2d Cir. 1978).