**MARINE POWER AND EQUIPMENT COMPANY, INC., Plaintiff,**

**v.**

**The UNITED STATES, Defendant.**

**Civ. A. No. 84–2469.**

United States District Court, District of Columbia.

Aug. 31, 1984.

Gilbert J. Ginsburg, Epstein, Becker, Borsody & Green, Washington, D.C., for plaintiff.

John Bayly, Asst. U.S. Atty., Washington, D.C., for defendant.

## MEMORANDUM

FLANNERY, District Judge.

This matter came before the Court on plaintiff's motion for a preliminary injunc-

tion and on motions to dismiss filed by defendant and defendant-intervenor. For the reasons stated herein, plaintiff's motion for a preliminary injunction is denied, the motions to dismiss are granted, and this case is dismissed.

## BACKGROUND

This is the fourth in a series of cases arising out of a United States Coast Guard procurement in which the Coast Guard seeks fifteen patrol boats ("WPBs") on an expedited basis to combat drug smuggling in the Gulf Coast area. *See Marine Power & Equipment Co. v. United States,* (1984) 5 Cl.Ct. 795 [hereinafter *"MPE I"* ]; *Bollinger Machine Shop & Shipyard, Inc. v. United States,* 594 F.Supp. 903 (D.D.C. 1984) [hereinafter *"Bollinger"*]; *Eastern Marine, Inc. v. United States,* 5 Cl.Ct. 34 (1984), *appeal docketed,* No. 84–1444 (Fed.Cir. July 19, 1984) [hereinafter *"Eastern Marine"*].[1] On May 11, 1984, the Coast Guard awarded the contract to plaintiff Marine Power & Equipment Company ("MPE"). Bollinger Machine Shop and Shipyard, Inc. ("Bollinger"), the only other bidder left in the competition immediately prior to the award, filed the *Bollinger* action in this Court shortly after the contract was awarded to its competitor. Bollinger alleged that the Coast Guard interpreted the Circular of Requirements ("COR") for the WPB procurement too broadly, and argued that a proper interpretation of the COR would reveal that MPE's proposal involving 12-cylinder WPB engines was nonresponsive and that Bollinger's 16-cylinder proposal *was* responsive. Bollinger sought an injunction setting aside the MPE award and requiring the Coast Guard to award the contract to Bollinger. MPE, whose entitlement to the contract award was being attacked directly in *Bollinger,* chose not to intervene. However, MPE actively assisted the Coast Guard during

---

1. The factual background for this case is further presented in *Bollinger,* 594 F.Supp. at 903–910.

the course of the *Bollinger* proceedings.[2] After two motions hearings and a hearing on the merits, and after consideration of numerous documents and extensive testimonial evidence, the Court set aside the Coast Guard's award to MPE. The crux of the Court's decision was that the Coast Guard ignored the explicit requirements of the COR and abandoned its stated commitment to the "Parent Craft" concept by permitting MPE engine size deviations from the Parent Craft which were simply determined to be "to the advantage of the WPB mission." *Bollinger*, 594 F.Supp. at 914–915. In doing so, the Court held, the Coast Guard clearly violated its own regulations, which were carefully designed to ensure expeditious delivery of low-risk patrol boats needed to satisfy the agency's urgent need for reliable craft. This impermissible action, the Court held, was prejudicial to Bollinger, which had submitted a conservative proposal that was, unlike the MPE 12-cylinder engine proposal, well within the specifications established by the COR.

In *Bollinger*, plaintiff Bollinger alleged in its complaint that its WPB bid was the only responsive offer. *Bollinger* Complaint ¶ 17. Defendant Coast Guard denied that Bollinger's proposal was "respon*sive*" but admitted that Bollinger was "fully respon*sible* and capable of performing in accordance with its offer and the RFP". Defendant's Answer in *Bollinger* at ¶ 17. After expedited discovery, the parties, with MPE's knowledge, stipulated that Bollinger's proposal was "an acceptable technical proposal from a responsible source, within the competitive range for this solicitation, conformed fully to the essential requirements of the solicitation, and was eligible for the award of the subject contract." After reviewing extensive evidence presented regarding Bollinger's proposal, this Court adopted the stipulation as fact. *Bollinger*, at 908–909. Bollinger argued that because it was a responsive bidder, the Court should award it the contract if it

found MPE's 12-cylinder proposal to be nonresponsive. Although the Court agreed that Bollinger was responsive, it refused to award it the contract because an additional bid was still before the agency, and uncertainty regarding that bid's responsiveness was created by a stipulation regarding MPE Parent Craft engine size. As the Court explained,

> the record reflects that MPE submitted a second bid involving WPB's with 16-cylinder engines. Although the parties stipulated for purposes of this action that the MPE Parent Craft could be treated as if it contained 20-cylinder engines, it may have contained 16-cylinder engines. If so, MPE's alternate 16-cylinder WPB bid may be responsive. It is not clear to the Court that multiple WPB bids are permissible, or that MPE's 16-cylinder bid is in fact responsive, because these issues have not been litigated here. If MPE's Parent Craft contained 20-cylinder engines, then its 16-cylinder proposal will probably face the same difficulty as its 12-cylinder proposal [dissimilar and not possessing "superior power"], but even that is not clear from this record.

*Id.* at 915. The Court went on to state that because Bollinger's bid was responsive, the Coast Guard certainly had the "option of expeditiously awarding the WPB contract to plaintiff." *Id.* at 915. Due to the presence of the MPE 16-cylinder bid, however, the Court remanded the case back to the Coast Guard for final selection, and directed that it take "appropriate action not inconsistent with the Court's decision." *Id.*, Judgment Order. The Court has since learned that MPE's Parent Craft contained 20-cylinder engines, a fact that was not before it in *Bollinger*.

Shortly after this Court's *Bollinger* decision, the Coast Guard issued a stop-work order to MPE. Before the Coast Guard took further action, MPE filed *MPE I* in the United States Claims Court. There, MPE sought injunctive relief enjoining the Coast Guard from awarding the WPB con-

---

**2.** *See Bollinger,* at 905 n. 1; *MPE I,* 5 Cl.Ct. at 797 n. 2, 800 n. 8; Government Exhibits 2, 3, & 4, attached to Defendant United States' Memo-randum in Opposition to Plaintiff's Motion for Expedited Discovery.

tract to anyone other than MPE. *MPE I,* 5 Cl.Ct. at 796, 800. MPE there argued that the *Eastern Marine* decision estopped this Court in *Bollinger* from finding MPE to be nonresponsive, that this Court did not have jurisdiction to litigate the *Bollinger* case, and that this Court's interpretation of the COR was incorrect because it ignored the Coast Guard's statutory duty to procure nothing more than vessels that would meet its "minimum needs." *Id.* at 797–798. The *MPE I* Court noted that MPE was not arguing that Bollinger's proposal violated the requirements of the solicitation. *Id.* at 800 n. 8. The Court held that MPE's preliminary injunction motion was without merit, and granted defendant's motions to dismiss.

On August 8, 1984, the Coast Guard awarded the WPB contract to Bollinger. On August 10, 1984, MPE, now an unsuccessful bidder, filed this action. Count I of plaintiff MPE's complaint now alleges that Bollinger's WPB proposal was not responsive to the solicitation. Count II alleges that the Coast Guard was obligated after the *Bollinger* decision to discuss with MPE the deficiencies in its proposals and to offer MPE an opportunity to revise its proposals before the contract was re-awarded. Count III alleges that the specifications of the COR, as interpreted by this Court, are too restrictive because they do not reflect the minimum needs of the Coast Guard, as allegedly required by law. Plaintiff requests preliminary and permanent injunctive relief directing the Coast Guard to set aside its award to Bollinger, discuss with MPE the deficiencies in its proposals, and amend its COR to reflect its minimum needs.

Shortly after commencement of this case, plaintiff filed a motion for expedited discovery and a motion for a preliminary injunction. Bollinger filed a motion to intervene, and defendant United States Coast Guard and Bollinger filed motions to dismiss. The Court granted Bollinger's motion to intervene, and a hearing was held on plaintiff's expedited discovery motion on August 16, 1984. Later that day, the Court denied plaintiff's motion for expedit-

ed discovery, ordered that both sides submit affidavits relevant to the preliminary injunction motion, and ordered that a hearing on the preliminary injunction motion and the motions to dismiss filed by the Coast Guard and defendant-intervenor Bollinger [hereinafter "defendants"] be held on August 23, 1984. Memorandum Order filed August 16, 1984. The issues were fully briefed and argument was heard.

## DISCUSSION

The Court is intimately familiar with the essential facts and legal issues involved in this case because it is the second case it has been called upon to decide involving the same procurement. In fact, as discussed in Part B below, many of the issues plaintiff seeks to litigate here have already been litigated. The Court has decided, however, to rule separately on plaintiff's motion for a preliminary injunction and defendants' motions to dismiss.

### A. *Plaintiff's Motion for a Preliminary Injunction.*

A party seeking the extraordinary remedy of a preliminary injunction must show (1) that it has a likelihood of succeeding on the merits of the complaint; (2) that it will be irreparably injured without the granting of the injunction; (3) that the issuance of the injunction will not substantially harm other parties interested in the proceedings; and (4) that the grant of a preliminary injunction would be in the public interest. *Washington Metropolitan Transit Commission v. Holiday Tours, Inc.,* 559 F.2d 841, 843 (D.C.Cir.1977). In considering plaintiff's motion for a preliminary injunction, the Court will assess plaintiff's likelihood of prevailing on the merits while assuming, *arguendo,* that plaintiff is not estopped from asserting its claims. At this point, the Court will consider MPE's involvement in relating litigation only insofar as it affects the Court's balancing of the equities.

 In this case, plaintiff MPE has demonstrated little, or no, likelihood of prevailing on the merits of any of its three claims.

Plaintiff faces the heavy burden of demonstrating either that "(1) the procurement official's decision on matters committed primarily to its own discretion had no rational basis, or (2) the procurement procedure involved a clear and prejudicial violation of applicable statutes and regulations." *Kentron Hawaii, Limited v. Warner*, 480 F.2d 1166, 1169 (D.C.Cir.1973). *Bollinger* was one of the rare cases in which the plaintiff satisfied this heavy burden; plaintiff here cannot do so.

The Court is convinced that plaintiff cannot prevail in its Count I claim that Bollinger's bid is nonresponsive. As discussed in Part B below, this Court is quite familiar with Bollinger's WPB proposal. Plaintiff now contends that Bollinger's WPB proposal is impermissibly "dissimilar" from Bollinger's Parent Craft because of changes in the WPB's electrical switchboard, the use of a governor in the WPB engine, and an increase in the potential horsepower of the WPB engine. The Court disagrees. Unlike the MPE 20 to 12-cylinder engine switch, the Bollinger engine substitution was necessitated by the unavailability of its Parent Craft engine. Unlike MPE's switch, the Bollinger substitution was clearly permissible under the COR and fully consistent with the Parent Craft concept. The complained-about changes in the Bollinger WPB electrical system, as well as Bollinger's use of a governor to ensure horsepower equivalence, are clearly the types of technical changes the Coast Guard had the discretion to approve, and the Court must defer to such technical judgments as it did in *Bollinger, see Bollinger*, 594 F.Supp. at 912–914. Most importantly, the Bollinger substitution of a new 16-cylinder engine for an outmoded 16-cylinder engine does not violate the explicit requirements of COR § 042. Under the liberal interpretation of the "similarity" requirement in the first part of § 042 approved in *Bollinger*, at 913–914, an engine substitution is clearly impermissible only if it violates the explicit requirements of the clause in § 042 which reads:

When lesser dimensions and weights and superior power, service, material, and maintenance characteristics are demonstrable and are to the advantage of the WPB's mission, the proposed item will be acceptable provided all other criteria are met.

Plaintiff does not contest that Bollinger's engine substitution involves a new engine that is approximately the *same* size as the Parent Craft engine, *see* Declaration of Frank N. McCarthey at ¶ 18. Hence the requirements of § 042, which apply only to *smaller* engines, may not even apply. Even if they do, it is also uncontested that the Bollinger WPB engine contains *superior* power, *id.* at ¶¶ 14–17, and the McCarthey affidavit and evidence adduced in *Bollinger* convince the Court that the new engine also has better maintenance characteristics and material than the replaced Parent Craft engine, *id.* In short, the Bollinger engine substitution clearly meets the requirements of the language of § 042 cited above. That section does not, as plaintiff argues, forbid any WPB engine that contains different horsepower or internal structure than the Parent Craft engine—it simply establishes requirements that must be met when substitutions are made. In fact, in stark contrast to MPE's substitution of a less powerful 12-cylinder engine for the MPE 20-cylinder Parent Craft, Bollinger reduced the dissimilarity of its engine substitution even further by inserting a governor that would create identical horsepower and avoid the need to restructure the craft's propulsion system. Bollinger's approach to this procurement was quite conservative, *see Bollinger*, at 908–909, 915, and plaintiff simply cannot prevail in its claim that Bollinger's substitutions rendered its WPB proposal nonresponsive or violated the Parent Craft requirements.

Neither can plaintiff prevail on Count II of its complaint—that the Coast Guard was obligated to discuss MPE's WPB proposals with MPE after the *Bollinger* decision and to provide MPE an opportunity to cure its deficiencies. As discussed in detail in Part B below, even if plaintiff's allegations are

accepted as true, this claim must be dismissed as a matter of law.

Plaintiff's Count III claim—that the COR impermissibly required more than the Coast Guard's "minimum needs"—is equally meritless. Even if the collateral estoppel and *res judicata* problems that bar this claim are brushed aside, the Court believes that the COR for this procurement did no more than require proposals that met the Coast Guard's minimum needs. Plaintiff's argument on this count is based on the pre-*Bollinger* opinion of Coast Guard technical officers that MPE's proposal was a satisfactory technical proposal. But in this procurement, the Coast Guard legitimately sought more than technically acceptable Patrol Boats. The Coast Guard, through the COR, stressed that it needed WPB's that would be tested, relatively risk-free, and capable of expeditious production and use. That is why the "Parent Craft" concept was developed and stressed throughout the procurement. The Coast Guard's "minimum need"—in fact its paramount need—in this procurement was for boats that did not deviate from proven Parent Crafts and so could be manufactured quickly and without the risks that would accompany a normal procurement, *see Bollinger*, at 905–906. As reflected in Sections 200 and 042 of the COR, the Coast Guard was particularly concerned that WPB engines be identical to or similar to Parent Craft engines, and was particularly averse to substitution of smaller engines that could deliver less power than the Parent Craft. Given the Coast Guard's urgent need for reliable patrol boats that could achieve speeds necessary for use in drug interdiction missions, these requirements were eminently reasonable and central to the procurement. It is precisely because the Coast Guard ignored these critical requirements—explicitly established by the COR—that this Court invalidated the MPE award in *Bollinger*. If this Court were to hold that the Coast Guard is not permitted to establish such requirements, as plaintiff argues, it would be forbidding the agency to establish requirements essential to its stated mission.

■ Plaintiff is not only unlikely to prevail on the merits of its claims, but has failed to convince the Court that a balancing of the equities favors issuance of a preliminary injunction. As Judge Margolis eloquently stated in *MPE I*, plaintiff is in no position to seek equitable relief at this point, having "slept on its rights" in a manner that estops it from seeking injunctive relief. *MPE I*, 5 Cl.Ct. at 800–801. Plaintiff chose not to intervene in *Bollinger*, in which it could have argued that Bollinger's WPB proposal was nonresponsive and that the MPE proposal met the Coast Guard's "minimum needs." Plaintiff could have argued in *MPE I* that Bollinger's proposal was nonresponsive, but failed to do so. *MPE I*, at 800 n. 8. It now seeks a third opportunity for court review of this procurement, and finally comes to this Court to argue that it will be irreparably injured if injunctive relief is not immediately granted. If this Court were to permit such litigation tactics, there would be no end to procurement disputes, as each bidder would sit back to see if the other bidder's court challenge is successful before intervening to protect its own rights. The Coast Guard in this case has an urgent need for Patrol Boats, and this Court is convinced that Bollinger's proposal is responsive. Similarly, the public has a strong interest in production of the boats in an expeditious manner to combat drug smuggling. Issuance of a preliminary injunction in these circumstances would do no more than delay an urgent mission for the benefit of a nonresponsive bidder that stands little, if any, chance of proving that its remaining proposals are acceptable or that its competitor's proposal is not acceptable. The Court will not exercise its discretionary authority to issue a preliminary injunction and thereby further interfere with this procurement.

### B. *Defendants' Motions to Dismiss.*

Notwithstanding the Court's view that plaintiff's chances of prevailing on Counts I and III of its claims are remote, the Court believes that plaintiff is estopped from liti-

gating those claims here. Count II of plaintiff's complaint, although not barred, must be dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim.

■ Plaintiff's Count I claim—that Bollinger's WPB bid is nonresponsive under this Court's interpretation of the COR—is barred under the related doctrines of collateral estoppel and *res judicata.* As noted above, plaintiff MPE chose not to intervene in *Bollinger,* even though its contract award was being challenged and its interests were at stake. However, MPE actively assisted the Coast Guard in that action. It furnished affidavits, did legal research and suggested arguments, consulted with the Coast Guard on discovery matters, benefitted by a stipulation regarding its Parent Craft engine size that preserved its proprietary privilege, was on notice of the case from the outset, and attended all court proceedings. As the Supreme Court held in *Montana v. United States,* 440 U.S. 147, 154, 99 S.Ct. 970, 975, 59 L.Ed.2d 210 (1979), the interests fostered by the doctrines of collateral estoppel and *res judicata* are implicated when non-parties assume control over litigation "in which they have a direct financial or proprietary interest" if they "then seek to redetermine issues previously resolved." In fact, the Court went so far as holding that one who "assists in the prosecution or defense of an action in aid of some interest of his own ... is as much bound ... as he would be if he had been a party to the record." *Id.,* citing *Schnell v. Peter Eckrich & Sons, Inc.,* 365 U.S. 260, 262 n. 4, 81 S.Ct. 557, 559, 5 L.Ed.2d 546 (1961). Under this reasoning, courts have held that a party that fails to intervene in an action directly challenging its interests may be barred from bringing a later collateral attack, *see Society Hill Civic Association v. Harris,* 632 F.2d 1045, 1052 (3d Cir.1980); *see also Southwest Airlines Co. v. Texas International Airlines,* 546 F.2d 84, 102 (5th Cir.) *cert. denied,* 434

U.S. 832, 98 S.Ct. 117, 54 L.Ed.2d 93 (1977); *Expert Electric, Inc. v. Levine,* 554 F.2d 1227, 1233–34 (2d Cir.) *cert. denied,* 434 U.S. 903, 98 S.Ct. 300, 54 L.Ed.2d 190 (1977). Thus, for purposes of the Court's estoppel analysis, MPE is bound by the *Bollinger* litigation as if it had been a party.

Under the doctrine of collateral estoppel, once an issue is "actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party [or an active non-party][3] to the prior litigation." *Montana,* 440 U.S. at 153, 99 S.Ct. at 973 (citations omitted). With regard to Count I of plaintiff's instant complaint, then, the critical issue for purposes of collateral estoppel analysis is whether Bollinger's responsiveness under the terms of the COR was "actually and necessarily determined" by this Court in *Bollinger.* As noted above, Bollinger alleged in its complaint that it was responsive, and the Coast Guard denied the allegation, although it admitted that Bollinger was respon*sible* and capable of performing in accordance with its offer and the RFP. It does not appear that the Coast Guard initially admitted that Bollinger met the requirements of the COR as interpreted by Bollinger and eventually by the Court. During the course of that litigation, however, the parties stipulated to Bollinger's responsiveness.[4] In support of Bollinger's argument that it deserved an injunction ordering that it be awarded the contract and in addition to the stipulation, Bollinger presented testimony and documentary evidence regarding the technical specifications of its WPB bid. After evaluating this evidence, the Court adopted the stipulation as fact, and relied upon the facts thereby established in fashioning its injunctive relief. The Court in *Bollinger* held that the Bollinger bid was responsive to the COR as interpreted by

3. The Court in *Montana* explained that the preclusion of active non-parties, as discussed above, falls under the rubric of collateral estoppel rather than *res judicata. Montana,* 440 U.S. at 154, 99 S.Ct. at 974.

4. It is undisputed that MPE knew of the Bollinger stipulation, objected thereto, but chose not to intervene.

the Court, *Bollinger,* 594 F.Supp. at 908, 915, 916. Because the possibility of another responsive bidder existed, however, the Court did not accept Bollinger's argument that it was the *only* remaining responsive bidder, and so declined to order that Bollinger be awarded the contract and remanded the case to the Coast Guard.

A strange estoppel issue is thus presented. MPE argues that the Court's finding that Bollinger was responsive was not "necessary" to the Court's decision, because a remand would have been required due to its alternative bid regardless of Bollinger's responsiveness. But the only reason the Court could not conclude that Bollinger was the only responsive bidder was because of the uncertainty created by a second stipulation regarding the engine size of MPE's Parent Craft. That stipulation, which stated that the MPE Parent Craft contained either 16 or 20-cylinder engines, was developed to protect MPE's proprietary privilege. If MPE's Parent Craft contained a 16-cylinder engine, then MPE's alternative 16-cylinder craft might have been responsive. If the Court had known the truth—that the MPE Parent Craft contained a 20-cylinder engine—then it would have been in a position to determine that MPE's alternative 16-cylinder bid was also nonresponsive due to dissimilarity in engine size, *see Bollinger,* at 915. Under such circumstances, Bollinger's proposal, which was clearly responsive, would have been deemed the only responsive bid and the contract would have been awarded to Bollinger. But for the misleading stipulation, then, the Court would have had to determine whether Bollinger's bid was responsive before awarding it the WPB contract, and the Court's finding on this issue would have been "necessary." It would be inequitable at this point to give credence to MPE's argument that the Bollinger responsiveness issue was not "necessary" to the *Bollinger* decision, since determination of the issue would have been "necessary" had the Court been told the truth about the MPE Parent Craft engine size during the *Bollinger* litigation.

A similar problem is presented with regard to the issue of whether Bollinger's stipulated responsiveness was "actually litigated." Although the issue was originally contested by the Coast Guard, a stipulation was reached. MPE argues that the stipulation was binding only for purposes of the *Bollinger* action, and has no binding effect on MPE, a non-party. Had MPE intervened and objected to the stipulation, however, the issue would have had to have been thoroughly litigated because its determination was necessary to the Court's fashioning of equitable relief, *see supra.* MPE is now attempting to shield itself from the estoppel consequences it would have faced if it had intervened. If MPE is treated as a party under the *Montana* reasoning, then it should be bound by the stipulation. In addition, the Court heard extensive testimony on the responsiveness of Bollinger's bid, and found as a fact that it was responsive. This action involves the same procurement and the same COR that was the subject of *Bollinger,* and, as discussed in Part A, no evidence has been presented here that persuades the Court that its prior finding that Bollinger was responsive was incorrect. Again, it would be inequitable and a waste of judicial resources to permit MPE to litigate this issue again.

■ Even if MPE is not technically collaterally estopped from litigating the issue of Bollinger's responsiveness, it is clearly barred by the doctrine of *res judicata* from doing so. Under *res judicata,* "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were *or could have been* raised in that action." *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414, 66 L.Ed.2d 308 (1980) (emphasis added). Clearly, MPE "could have" and should have raised the issue of Bollinger's responsiveness in the United States Claims Court in *MPE I.* When that action was filed, and by virtue of this Court's *Bollinger* order, the original MPE award was set aside and the Bollinger and MPE 16-cylinder proposals were the only proposals that were even arguably eligible for the award.

In *MPE I*, MPE sought an injunction against the award to any bidder except MPE. Clearly, the allegation that Bollinger was nonresponsive and therefore not eligible would have been an appropriate one which, assuming this Court's *Bollinger* decision did not bar such an allegation, could have been litigated in the Claims Court. Had the issue been raised there, the Claims Court, if it concluded that the issue was not collaterally estopped by *Bollinger*, could have litigated it fully, and, if it decided in plaintiff's favor, could have granted the requested injunction against award to any bidder other than MPE—because MPE would then have been the only remaining bidder. But MPE chose not to raise the issue of Bollinger's responsiveness in the Claims Court, *MPE I*, 5 Cl.Ct. at 800 n. 8, and now seeks to raise the issue here. As the Court held in *Marrese v. American Academy of Orthopedic Surgeons*, 726 F.2d 1150, 1152 (7th Cir.) (*en banc*), *cert. granted in part*, —— U.S. ——, 104 S.Ct. 3553, 82 L.Ed.2d 854 (1984), the doctrine of *res judicata* forbids a plaintiff from splitting his cause of action by bringing a suit on one theory and then, after he has lost, trying again on a different theory. *See Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981). The final judgment in *MPE I*,[5] which involved the same procurement as is at issue here, bars plaintiff from bringing its Count I claim.

Count III of plaintiff's complaint is similarly barred by the doctrines of collateral estoppel and *res judicata*. The central issue in *Bollinger* was the proper interpretation of the COR for this procurement. Plaintiff's "minimum needs" argument is no different from the arguments presented by the Coast Guard in *Bollinger*. The Coast Guard there argued that MPE's 12-cylinder proposal was acceptable under Section 042 of the COR because it was deemed "to the advantage of the WPB mission." *Bollinger*, 594 F.Supp. at 914.

The Coast Guard argued that because it had made that technical determination, the Court should not interfere and should not interpret the COR as requiring more. That argument was rejected in light of the explicit language of § 042 requiring "superior power and maintenance" for smaller engine substitutions. *Id.* at 914–915. These explicit requirements, the Court determined, were consistent with the COR's stated reliance on the "Parent Craft" concept, which was designed to fulfill the Coast Guard's urgent need for reliable and proven boats. *Id.* at 905–906, 915. Thus, this Court has already faced and rejected the "minimum needs" argument, albeit not couched in those exact terms. MPE is therefore collaterally estopped from relitigating that issue here.

In addition, MPE presented its "minimum needs" argument to the Claims Court, *MPE I*, 5 Cl.Ct. at 798, 799, 800 n. 9. That Court decided that MPE was estopped from litigating the issue there because it was already litigated in *Bollinger*, *id.* at 914 n. 9. This Court agrees, and refuses to give plaintiff a third chance to litigate its meritless position.

■ Plaintiff is correct that the doctrines of *res judicata* and collateral estoppel do not bar its Count II claim that the Coast Guard was required to discuss the deficiencies in the MPE proposals prior to awarding the WPB contract to Bollinger. But this claim is clearly meritless, and is properly dismissed under Fed.R.Civ.P. 12(b)(6). Given this Court's *Bollinger* decision—in which the Coast Guard was explicitly given the option of expeditiously awarding the contract to Bollinger, the Coast Guard acted reasonably in so doing. Plaintiff alleges that the Burnley Memorandum, attached to Plaintiff's Supplemental Brief in Opposition to Defendant and Defendant-Intervenor's Motions to Dismiss as Exhibit A, shows that the Coast Guard failed to consult with MPE and did nothing

5. The court in *MPE I* granted defendants' motions to dismiss under Fed.R.Civ.P. 12(b)(6), which is the equivalent of a judgment on the merits. *Federated Department Stores, Inc. v. Moitie*, 452 U.S. 394, 399 n. 3, 101 S.Ct. 2424, 2428 n. 3, 69 L.Ed.2d 103 (1981).

more than assess the viability of its options in light of the *Bollinger* decision before deciding to award the contract to Bollinger. The Court accepts these allegations as true, but holds that the Burnley affidavit demonstrates that the Coast Guard took "appropriate action in accordance with" this Court's *Bollinger* decision as directed, and that the agency was obligated to do nothing more. As discussed in detail above, the only reason the Court remanded the *Bollinger* case to the Coast Guard was because MPE's alternative 16-cylinder proposal may have been responsive if its Parent Craft had contained 16-cylinder engines, which would have given the Coast Guard the option of awarding the contract to MPE for that proposal instead of to Bollinger for its responsive proposal. But the Court also stated in *Bollinger* that, in the event that MPE's Parent Craft in fact contained 20-cylinder engines, then MPE's 16-cylinder proposal would be nonresponsive also, *Bollinger*, at 915. MPE now admits what was known already by the Coast Guard—that its Parent Craft contained 20-cylinder engines. Thus, the Coast Guard was faced with only three "best and final offers": the MPE 12-cylinder proposal, which this Court held to be nonresponsive; the 16-cylinder MPE proposal, which this Court strongly indicated to be nonresponsive; and the Bollinger proposal, which this Court held to be responsive. The Coast Guard's selection of the Bollinger proposal was clearly in accordance with this Court's directive.

MPE contends that the Coast Guard was nevertheless obligated to give MPE a chance to discuss its deficiencies and to cure them. It cites several procurement regulations in support thereof, but those regulations have since been replaced by the Federal Acquisition Regulations System, which now governs all federal procurements, *see* 48 Fed.Reg. 42103 *et seq.* Plaintiff would argue that the "discussions" requirements set forth in FAR § 15.609–610, 48 Fed.Reg. 42202, required the Coast Guard to reopen discussions with MPE and Bollinger after this Court set aside the original award to MPE. The Court disagrees. Section 15.611(c), 48 Fed.Reg. 42203, explicitly states that "after receipt of best and final offers, the contracting officer should not reopen discussions unless it is clearly in the Government's interest to do so." In this case, in which the Coast Guard's urgent need for WPB's has already been delayed by litigation, it is clearly *not* in the Government's interest to reopen discussions—especially in light of this Court's *Bollinger* decision, which makes the responsiveness of Bollinger's proposal clear and the nonresponsiveness of MPE's two "best and final offers" equally obvious.[6] Further, as defendants have pointed out, even if the Coast Guard reopened discussions, MPE's chances to "cure" its WPB proposals would be remote and such action would be very time-consuming. Because the MPE Parent Craft contains 20-cylinder engines, both the 12 and 16-cylinder proposals could only be made "similar" by insertion of 20-cylinder engines. Such a substitution would involve prohibitive cost and would require extensive technical modifications from MPE's two existing offers. Even if the Coast Guard were to permit such time-consuming changes, evidence adduced in *Bollinger* established that a 20-cylinder WPB would not be responsive either, because it could not meet cruising range requirements. *Bollinger*, at 909. In fact, it was because of this deficiency that MPE initially decided to substitute smaller engines. *Id.* at 913.

---

**6.** Plaintiff also argues that Section M–2 of the Request for Proposals ("RFP") for this procurement required the Coast Guard to reopen discussions. But this argument fails for the same reason—the RFP only requires negotiations *before* submission of "best and final offers," and explicitly states that "negotiations, if held, will be closed simultaneously with all offerors in the final competitive range with the submission of a best and final offer." RFP § M–2(7). The RFP contains no requirement that the negotiations process be reopened, subsequent to the submission of best and final offers, if a reviewing court determines that one or more of those offers is nonresponsive.

Hence, even if there is some requirement, not known to the Court, that the Coast Guard give MPE a second chance to modify its proposals, and even if that requirement was violated, the violation is not "prejudicial" to MPE because MPE cannot cure its deficiencies to meet the requirements of the COR given its present Parent Craft. Absent a prejudicial violation of agency regulations, a disappointed bidder is not entitled to relief, *Kentron Hawaii*, 480 F.2d at 1169. Plaintiff here, however, cannot even point the Court to an applicable regulation that has been violated, and the Court declines to invent a requirement that federal procurements be reopened every time an award is set aside by a Court in favor of a responsive competing bidder. Such a requirement would stifle the government procurement process and prejudice bidders that have faithfully adhered to an agency's explicit procurement requirements in favor of those that have persuaded an agency to bend its requirements impermissibly.

For the reasons discussed above, this case is dismissed. An appropriate Order accompanies this Memorandum.

ORDER

This matter came before the Court on plaintiff's motion for a preliminary injunction, and on motions to dismiss filed by defendant and defendant-intervenor. For the reasons stated in an accompanying Memorandum, after careful consideration of the motions filed, the oppositions thereto, the arguments of counsel, and the entire record in this case, it is, by the Court, this 31st day of August, 1984,

ORDERED, that plaintiff's motion for a preliminary injunction is denied; and it is further

ORDERED, that the motions to dismiss filed by defendant and defendant-intervenor are granted; and it is further

ORDERED, that this case be, and hereby is, dismissed with prejudice.