**DRUG MART PHARMACY CORP.,**
et al., Plaintiffs,

v.

**AMERICAN HOME PRODUCTS,**
**CORP., et al., Defendants.**

No. 93–CV–5148 (ILG).

United States District Court,
E.D. New York.

Oct. 23, 2003.

326

Mary McInnis Boies, Mary Boise & Associates, Bedford, NY, William Duker, Boies Schiller & Flexner LLP, New York City, for Plaintiffs.

Micheal J. Gallagher, Richard J. Holwell, Robert A. Milne, Ronald W. Davis, White & Case, Wayne A. Cross, Dewey Ballantine LLP, New York City, John W. Nields, Jr., Howrey, Simon, Arnold & White, LLP, Marguerite S. Boyd, William L. Webber, Howrey & Simpson, Washington, DC, Mark S. Stewart, Ballaerd Spahr Andrews & Ingersoll, LLP, Philadelphia, PA, James C. Egan, Clifford Chance US LLP, Washington, DC, for Defendants.

## ORDER

GLASSER, District Judge.

The manufacturer defendants (the "defendants") have moved this Court for an Order that would grant them summary judgment with respect to post May 1, 1996 claims asserted against them. The Boies/Gravante and the Malley plaintiffs (the "individual plaintiffs" or the "opt-out plaintiffs" or the "plaintiffs") have moved this Court for an Order declaring that questions of fact exist for trial and that would direct expedited discovery.[1]

On May 1, 1996, two-thirds of the manufacturer defendants and the class plaintiff entered into an Amended Settlement Agreement (the "Agreement"). In an *in limine* ruling, Judge Kocoras dismissed all claims after the date of the Amended Settlement Agreement, finding that the set-

---

1. The Malley plaintiffs have fully settled and compromised their claims against the defendants and their joint motion to dismiss their action with prejudice was granted by an Order dated September 16, 2003.

The Federal Rules of Civil Procedure provide no mechanism by which a ruling that issues exist for trial can be obtained. The plaintiffs' motion seeking that ruling will be regarded as in furtherance of their opposition to the defendants' motion for partial summary judgment.

tling defendants withdrew from the conspiracy as of that date, and, as a result, the alleged conspiracy ended as to all defendants.

Not surprisingly, the defendants urge this Court to adopt the conclusion reached by Judge Kocoras and dismiss the post May 1, 1996 claims. The plaintiffs urge the Court to decide that "whether the defendants withdrew from the conspiracy or whether the conspiracy and its effects have ended are issues of fact for the jury."

### RELEVANT BACKGROUND

Like the class plaintiffs, the individual plaintiffs allege an "industry-wide conspiracy" in which nearly every major manufacturer (and wholesaler)[2] of brand name prescription drugs ("BNPDs") participated in a massive agreement not to offer discounts to retail pharmacies, in violation of Section 1 of the Sherman Act, 14 U.S.C. § 1. The Sherman Act claims by the class plaintiffs and the non-class plaintiffs are fundamentally the same.[3] *In re BNPD Antitrust Litig.*, 94 C 897, MDL No. 997, 1995 WL 654134 at *1 (N.D.Ill. Nov. 3, 1995) (Defs.' Ex. C).

### I. *The Settlement Agreements*

In January 1996, sixteen (16) manufacturer defendants entered into settlement agreements with the class plaintiffs. After a hearing, Judge Kocoras found the monetary considerations to be adequate, but rejected the agreements because they did not include any commitments by the settling defendants regarding future pricing

practices. *See In re BNPD Antitrust Litig.*, No. 94 C 897, MDL No. 997, 1996 WL 167347 (N.D.Ill. Apr. 4, 1996) (Defs.' Ex. E).

On May 1, 1996, thirteen (13) manufacturer defendants—representing nearly two-thirds of all defendants' sales of BNPDs at retail—entered into an amended settlement with the class plaintiffs. The amended settlement incorporated the acceptable portions of the original settlement and included the following language as to future pricing practices:

1. No settling Defendant shall refuse to grant discounts with respect to its Brand Name Prescription Drugs to any member of any class solely on the basis of its status as a retailer.

2. With respect to any of its Brand Name Prescription Drugs, to the extent that any retail pharmacy, which is a member of the class, or any retail buying group demonstrates to the relevant Settling Defendant its ability to affect market share of such drug in the same or similar manner in which managed care entities are able to do so, such retail pharmacy or buying group will be provided the opportunity to negotiate ·and earn comparable types of incentives, if any, on similar terms and conditions as are then being given for that reason by that Settling Defendant to such managed care entities.

(*See* Amended Settlement Agreement ¶¶ 1, 2 & 7) (Defs.' Ex. F) ("The Agreement"). The Agreement also includes an enforce-

---

**2.** On May 6, 2002, the Seventh Circuit affirmed Judge Kocoras's grant of the wholesaler's motion for summary judgment, which dismissed the individual plaintiffs' claims against them. *In re BNPD Antitrust Litig.*, 288 F.3d 1028, 1032–35 (7th Cir.2002) (holding evidence insufficient to show that wholesalers knew of manufacturers' alleged

conspiracy to price discriminate between retailers and hospitals (and HMOs) via chargeback system).

**3.** However, the individual plaintiffs raise an additional claim based on a boycott theory which the Court addressed in a Memorandum and Order dated August 21, 2002.

ment mechanism, whereby any class member could initiate proceedings before Judge Kocoras to enforce compliance. *Id.*

All 40,000 class members and the non-settling defendants were notified in writing of the amended settlement as required by Rule 23(e) of the Federal Rules of Civil Procedure, and the date and time of the fairness hearing. (*See* Report of Michael J. Freed on Mailing and Publication of Notice, Jun. 10, 1996 (Defs.' Ex. G).) Notice of the fairness hearing was also published in the *Wall Street Journal.* After giving full consideration to numerous objections, Judge Kocoras approved the Amended Settlement Agreement as "fair, reasonable, and adequate." *In re BNPD Antitrust Litig.*, No. 94 C 897, MDL No. 997, 1996 WL 351180, at *1, 4 (N.D.Ill. June 24, 1996) (Defs.' Ex. H). Judge Kocoras held:

> On April 4, 1996, this court rejected the proposed partial settlements because they lacked a firm commitment on the part of the settling defendants. We believe that, with the addition of the amendment, the settling defendants have now made such a commitment, and they have done so *as a matter of contract.* Should a settling defendant fail in good faith to fulfill its commitment during the lifetime of the settlement agreements, recourse remains available in this court.

*Id.* (emphasis in original). To date, none of the class plaintiffs has sought judicial enforcement of these pricing commitments. (*See* Defs.' Br. in Support of Mot. for Partial Summ. J. at 8–9.)

## II. *Judge Kocoras's In Limine Ruling*

Shortly prior to trial, the class plaintiffs submitted an updated damages calculation based on their contention that the alleged conspiracy continued to the date of trial. The defendants moved *in limine* to exclude any evidence regarding alleged dam-

ages subsequent to the signing of the Amended Settlement Agreement. Judge Kocoras granted the motion, holding that "[b]y entering the Amended Settlement Agreement, along with the attendant notices to the remaining coconspirator defendants, these alleged coconspirators announced their withdrawal to their alleged coconspirators. As a matter of law, no more is required to effectuate a withdrawal." (Ruling on Mot. *In Limine* at 10–11 (Defs.' Ex. I).) He then ruled that "the withdrawal from the conspiracy by the settlement on the part of a substantial number of defendants, along with the attendant notice of settlement (withdrawal) to the remaining defendants, terminated the charged conspiracy as a matter of law on May 1, 1996." (*Id.* at 11.)

After a ten week trial, Judge Kocoras granted the remaining defendants judgment as a matter of law. *In re BNPD Antitrust Litig.*, No. 94 C 897, MDL No. 997, 1999 WL 33889 (N.D.Ill. Jan. 19, 1999) (Defs.' Ex. J). The class plaintiffs appealed that decision, arguing, among other things, that the *in limine* ruling improperly limited the evidence at trial. Without addressing this argument, the Seventh Circuit affirmed a substantial part of the judgment. *In re BNPD Antitrust Litig.*, 186 F.3d 781 (7th Cir.1999) (affirmed in part, vacated and remanded in part), *cert. denied*, 528 U.S. 1181, 120 S.Ct. 1220, 145 L.Ed.2d 1120 (2000).

## DISCUSSION

### I. *The Settling Defendants Withdrew From the Alleged Conspiracy*

To withdraw from a conspiracy, a defendant must show: (1) "[a]ffirmative acts inconsistent with the object of the conspiracy," that are (2) "communicated in a manner reasonably calculated to reach

co-conspirators." [4] *United States v. United States Gypsum Co.,* 438 U.S. 422, 464–65, 98 S.Ct. 2864, 57 L.Ed.2d 854 (1978); *Hyde v. United States,* 225 U.S. 347, 369, 32 S.Ct. 793, 56 L.Ed. 1114 (1912). "Mere cessation of activity is not enough." *Borelli,* 336 F.2d at 388; *Greenfield,* 44 F.3d at 1149. A defendant must take an affirmative action "to disavow or defeat the purpose of the conspiracy," *United States v. Nerlinger,* 862 F.2d 967, 974 (2d Cir.1988) (quoting *United States v. James,* 609 F.2d 36, 41 (2d Cir.1979)), "to make sure that a withdrawal did occur and is not simply being invented *ex post,*" *Greenfield,* 44 F.3d at 1150. Until affirmative evidence of withdrawal has been produced, a defendant's participation in the conspiracy is presumed to continue until the last overt act by any of the conspirators. *United States v. Panebianco,* 543 F.2d 447, 453 (2d Cir.1976). The burden of demonstrating withdrawal lies on the defendant. *See United States v. Berger,* 224 F.3d 107, 118 (2d Cir.2000); *James,* 609 F.2d at 41; *Borelli,* 336 F.2d at 388. Whether a defendant withdrew from a conspiracy is often a question of fact for the jury, *see, e.g., Panebianco,* 543 F.2d at 454 n. 5; *Borelli,* 336 F.2d at 390; however, when the material facts are not disputed, courts have decided the issue as a matter of law, *see, e.g., United States v. Goldberg,* 401 F.2d 644, 648–49 (2d Cir.1968); *Morton's Mkt., Inc. v. Gustafson's Dairy, Inc.,* 198 F.3d 823, 839 (11th Cir.1999).[5]

█ Defendants argue that by committing to the pricing provisions of the Amended Settlement Agreement, the settling defendants took "affirmative steps inconsistent with the object of the conspiracy." (*See* Def. Br. in Support of Mot. for Partial Summ. J. at 10–11.) That conclusion is inescapable. The conspiracy alleged by plaintiffs involves the collective refusal by manufacturers to grant retail pharmacies discounts given to managed care organizations. However, by entering into the Amended Settlement Agreement, these manufacturers made a "firm commitment" to make discounts available to retail pharmacies and not to refuse to deal with these pharmacies on the basis of their retail status. *In re BNPD Antitrust Litig.,* 1996 WL 351180, at *4. Moreover, these commitments are enforceable, albeit only by the settling class plaintiffs, "as a matter of contract." *Id.* In addition, the withdrawal was "communicated in a manner reasonably calculated to reach co-conspirators" by virtue of the public settlement notices and elaborate approval process mandated by Rule 23. *Gypsum,* 438 U.S. at 464, 98 S.Ct. 2864. Indeed, for these reasons, Judge Kocoras held that the settling defendants withdrew from the conspiracy, and that no more was required to effectuate a withdrawal as a matter of law. *See In Limine* Ruling at 10–11 (citing *Gypsum* ).

The plaintiffs' arguments to the contrary are neither sound nor convincing. They contend that this Court is not bound by Judge Kocoras's ruling as it has no *res judicata* or collateral estoppel effect. However, defendants do not urge that view

---

**4.** A defendant may also withdraw from a conspiracy by reporting the conspiracy to the authorities. *See United States v. Borelli,* 336 F.2d 376, 388 (2d Cir.1964) (withdrawal requires an affirmative action, which may be "the making of a clean breast to the authorities."); *accord United States v. Greenfield,* 44 F.3d 1141, 1149–50 (2d Cir.1995).

**5.** The law of withdrawal from a conspiracy has developed primarily in the criminal context; however the same standard has been applied to civil conspiracy cases. *See, e.g., Morton's Mkt.,* 198 F.3d at 838. (11th Cir. 1999) (applying *Gypsum* principles in considering withdrawal from an alleged civil antitrust conspiracy); *In re BNPD Antitrust Litig.,* 123 F.3d 599, 616 (7th Cir.1997) (same).

nor could they. The individual plaintiffs were not parties or privies to that action and its ruling therefore has no legally binding effect on them.[6] *See Federated Dept. Stores, Inc. v. Moitie,* 452 U.S. 394, 398, 101 S.Ct. 2424, 69 L.Ed.2d 103 (1981).

In addition, the plaintiffs contend that the *in limine* ruling is irrelevant because the Amended Settlement Agreement did not apply to the opt-out plaintiffs. To the extent that the opt-out plaintiffs were not parties to the Amended Settlement Agreement, it is correct that they are not bound by its terms.

■ The plaintiffs would have this Court hold that Judge Kocoras did not go far enough when he determined that the defendants withdrew from the alleged conspiracy when they entered into the Amended Settlement Agreement. They contend that the defendants have not disavowed the alleged conspiracy nor have they shown that they have been faithful to its terms and no longer engaged in what the plaintiffs alleged was illegal activity. The legally effective withdrawal from a conspiracy does not require an accompanying pronouncement of *mea culpa.* The plaintiffs would place a gratuitous gloss on *Gypsum,* 438 U.S. at 464–65, 98 S.Ct. 2864, which taught that "[a]ffirmative acts inconsistent with the object of the conspiracy and communicated in a manner reasonably calculated to reach co-conspirators have generally been regarded as sufficient to establish withdrawal or abandonment." It is difficult to conceive of a more explicit disavowal of allegedly conspiratorial conduct than is expressed by the terms of the Amended Settlement Agreement which surely is an "affirmative act" by the settling defendants that is "inconsistent" with the alleged object of the conspiracy. That the Agreement was made known to the other defendants in the proceeding required by Rule 23 Fed.R.Civ.P. is not in dispute.

The speculative assertion that the settling defendants, the Agreement notwithstanding, continue to engage in prohibited activity, is belied by the fact that not a single plaintiff has felt the necessity to commence a proceeding to enforce the Agreement in accordance with its terms.

■ The discussion thus far as to whether the defendants withdrew from the conspiracy in 1996, driving the Court to conclude as a matter of law that they did, may have placed undue emphasis, I suggest, upon the traditionally understood principles governing that issue. That is to say—have the defendants effectively announced to their alleged coconspirators that they are no longer parties to the alleged conspiratorial agreement and taken some affirmative step to manifest that announcement. Insufficient emphasis has been placed upon the fact that it is a *settlement* which is at the core of the issue. A *settlement,* after all, is an agreement by one party who, for a valid consideration, is releasing the other from whatever liability it is claimed he may have incurred. Here, the consideration supporting the settlement is the promise by the manufacturers that they will not engage in the activity

---

**6.** The defendants do, however, dispute plaintiffs' contention that they were "precluded" from participating in the settlement proceedings based on the fact that sixty-four (64) pharmacies that were part of the Boies/Gravante group (who neglected to timely opt-out of the class) raised objections to the Amended Settlement, which Judge Kocoras considered and rejected. (*See* Def. Opp'n Br. to Mot. for Ruling and for Expedited Discovery at 6–7.) In addition, the individual plaintiffs could have intervened in the class action with respect to the Amended Settlement Agreement, but chose not to. *See In re BNPD Antitrust Litig.,* 115 F.3d 456 (7th Cir.1997) (dismissing the opt-out plaintiffs' appeal from the Amended Settlement Agreement because they failed to intervene in the district court).

complained of. Consideration of the traditional principles governing "withdrawal" from a conspiracy are irrelevant in that context. The remedy from that point forward is found in the law of contracts and not in the law of conspiracy. Judge Kocoras may have divined that when he wrote that the settling defendants made their commitment "as a matter of contract." *See In re BNPD Antitrust Litig.*, 1996 WL 351180, at *4.

The cases upon which the plaintiffs rely as requiring the defendants to affirmatively evidence that they have unequivocally distanced themselves from the alleged conspiracy are clearly distinguishable. In *United States v. Dallas*, 229 F.3d 105 (2d Cir.2000), the Court held that withdrawal from a conspiracy is not a defense to a conspiracy count directed at the period prior to withdrawal which serves only to end a conspirator's liability for acts taken thereafter by another conspirator. *See also United States v. Read*, 658 F.2d 1225 (7th Cir.1981). In *United States v. Williams*, 81 F.3d 1434 (7th Cir.1996), the district judge's finding that the defendant did not withdraw from the conspiracy was affirmed. The plaintiffs' reference to *Williams*, I assume is prompted by the time-bomb analogy to be found in *United States v. Patel*, 879 F.2d 292, 294 (7th Cir.1989), in which it was dictum. *United States v. Borelli*, 336 F.2d 376 (2d Cir. 1964), is frequently cited for the principle that "[m]ere cessation of activity is not enough to start the running of the statute; there must also be affirmative action either the making of a clean breast to the authorities, or communication of the abandonment in a manner reasonably calculated to reach coconspirators." 336 F.2d at 388 (internal citations omitted). That case adds little comfort to the plaintiffs reaffirming, as it does, the elements of withdrawal from a conspiracy announced in *Gypsum*. In *United States v. LoRusso*,

695 F.2d 45, 55 n. 5 (2d Cir.1982), the court wrote "we have never viewed withdrawal from a conspiracy as a defense to a conspiracy count directed at the period prior to withdrawal," and neither do the defendants. In *United States v. Bullis*, 77 F.3d 1553 (7th Cir.1996), assuming that the court would regard the waiver issue as having been timely raised, the court held that the district court's finding that the defendant continued in the conspiracy after claiming to have left it was supported by sufficient evidence. The plaintiffs' reliance upon *Bullis* is apparently bottomed upon the observation that "conduct by a defendant after a purported withdrawal is relevant to whether the withdrawal was actually complete and in good faith," 77 F.3d at 1562, in support of its insistence that a jury should have the opportunity to examine the defendants' post settlement conduct to confirm whether their withdrawal was complete and in good faith. In this regard, mention has already been made of the enforcement provision of the Settlement Agreement and that the provision was never invoked. Evidence of Bullis's post withdrawal activity contrasted with the absence of even a suggestion of such activity here makes *Bullis* inapposite.

The plaintiffs' other challenges to the conclusion that there is a direct relationship, and an effective one, between the Settlement Agreement and the defendants' withdrawal from the conspiracy have been considered and deemed to be without merit and unworthy of extended discussion.

I have also examined the plaintiffs' request for expedited discovery based upon their assertion that further probing will reveal post Settlement Agreement conduct inconsistent with a finding of withdrawal. Letters from Eli Lilly & Co., Boehringer Ingelheim, and Johnson & Johnson to buttress that request have also been examined and found unpersuasive and little more

than speculative that additional discovery will reveal continuing participation in the alleged conspiracy.

The risk of undue repetition will be assumed by noting once again that the enforcement provision of the Settlement Agreement has not been invoked by any party to it. Settlement Agreements, designed to put an end to controversy, will never achieve that end if any third party can insist upon embarking upon a discovery expedition on the off chance that the Agreement has been honored in the breach.

■ The plaintiffs have filed a post-motion Rule 56(f) affidavit to stay summary judgment to permit additional discovery. Their failure to file that affidavit together with the original motion submissions was because they believed the defendants could not succeed on their view that there was a withdrawal from the conspiracy as a matter of law. The plaintiffs were wrong, their affidavit is untimely and will be disregarded.

## II. Has The Conspiracy Ended As To All Defendants

■ Given the conclusion that the Settlement Agreement constituted an effective withdrawal by the settling defendants from the alleged conspiracy, the question to which that withdrawal gives rise is as to its effect upon the alleged conspiracy as a whole. In this regard, it is relevant, but not dispositive, to note again that incident to the trial of the class action that began in September 1998, the defendants moved *in limine* to exclude evidence of alleged damages claimed to have been suffered after the Amended Settlement in 1996. In granting that motion, Judge Kocoras ruled as a matter of law that the alleged conspiracy expired with the signing of that Agreement. (*In re BNPD Antitrust Litigation,* September 14, 1998 Rulings on Motions *in limine,* pp. 10–11.) At the conclusion of that trial, Judge Kocoras granted judgment to the defendants as a matter of law. The Court of Appeals affirmed that determination in all material respects excepting the plaintiffs' claim that "in the early 1990's the defendant manufacturers agreed among themselves to peg future price increases to the Consumer Price Index" was remanded for further proceedings. *In re BNPD Antitrust Litigation,* 186 F.3d 781 (7th Cir.1999), *cert denied,* 528 U.S. 1181, 120 S.Ct. 1220, 145 L.Ed.2d 1120 (2000).

The conspiracy alleged is claimed to embrace the entire industry, the members of which all agreed to deny discounts to retail pharmacies. After the Settlement Agreement, to which more than half of the manufacturer defendants were parties, accounting for a significant portion of BNPD sales, the alleged conspiracy, in its entirety, collapsed with it. That is to say, there was no longer a conspiracy embracing the *entire industry.* The conclusion to that effect reached by Judge Kocoras was buttressed by the expert witnesses for the class plaintiffs. In his deposition, Professor Robert Lucas testified that in his opinion the conspiracy could not exist unless every firm with at least ten percent market share in the industry were a part of it. (Lucas Dep. at 378.)

Dr. Wesley Magat testified at his deposition that in his opinion, if Eli Lilly, which has a large presence in the industry, were not a member of the conspiracy and acting independently to lower prices, "it would most likely lead to an unraveling of the collusion agreement." (Magat Dep. at 96–97.)

■ The opinions of Professor Lucas and Dr. Magat are reflective of judicial determinations to the same effect. In *Total Benefit Services, Inc. v. Group Ins. Admin., Inc.,* 875 F.Supp. 1228 (E.D.La.

1995), the Court granted summary judgment to the defendant charged with violating the antitrust law where "the structure of the relevant market is so fragmented as to render the claimed conspiracy economically infeasible [sic] or impossible." 875 F.Supp. at 1234 (relying upon *In re Beef Indus. Antitrust Litig.*, 907 F.2d 510, 516 (5th Cir.1990)). In that case, an antitrust conspiracy claim was dismissed by summary judgment upon the court's finding that viewing the relevant market as consisting of four major packers and 471 smaller packers, such a claim was economically unfeasible because any attempt at conspiracy by two competitors in such a market could not succeed because the non-conspiring competitors could counteract efforts at anti-competitive behavior. Research has uncovered only those two cases as speaking directly to the point being made. The paucity of precisely relevant judicial pronouncements may be due, I suspect, to the self-evident answer demanded by the contemplated feasibility of a surviving conspiracy among the non-settling manufacturers which would make litigating it futile. In the context of this case, it must follow that a claimed industry-wide conspiracy to refuse to deal with retail pharmacies was no longer economically feasible when more than half of the industry was bound by contract not to refuse to deal with those pharmacies on the basis of their status as retailers. That is to say, the settling defendants, discounting BNPDs to retail pharmacies, made the purchase by those pharmacies of BNPDs at non-discounted prices from the non-settling defendants highly unlikely and thus sounded the death knell for any viable conspiracy among remaining non-settling manufacturers to control the prices of such drugs. Courts should not permit an inference of a conspiracy when such an inference is not reasonable to draw. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 593, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

For the foregoing reasons, the defendants' motion for partial summary judgment is granted.

SO ORDERED.