# United States Court of Appeals
# for the Federal Circuit

_____

**FRANK P. SLATTERY, JR., AND LFC NO. 1 CORP,**
**on behalf of themselves and**
**on behalf of all other similarly situated sharehold-**
**ers of Meritor Savings Bank,**
*Plaintiffs-Appellees,*

**v.**

**STEVEN ROTH AND INTERSTATE PROPERTIES,**
*Plaintiffs-Appellants,*

**v.**

**UNITED STATES,**
*Defendant-Appellee,*

**v.**

**JOHN R. MCCARRON,**
*Movant-Appellant.*

_____

2012-5041, -5068

_____

Appeal from the United States Court of Federal
Claims in 93-CV-280, Senior Judge Loren A. Smith.

_____

Decided: March 21, 2013

_____

THOMAS M. BUCHANAN, Winston & Strawn, LLP, of
Washington, DC, argued for plaintiffs-appellees.

RICHARD J. UROWSKY, Sullivan & Cromwell, LLP, of New York, New York, argued for plaintiffs-appellants. With him on the brief was BRADLEY P. SMITH.

BRIAN A. MIZOGUCHI, Senior Trial Counsel, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were JOYCE R. BRANDA, Acting Deputy Assistant Attorney General, JEANNE E. DAVIDSON, Director, and SCOTT D. AUSTIN, Assistant Director. Of counsel on the brief were JACOB A. SCHUNK and AMANDA L. TANTUM, Trial Attorneys.

JEFFREY B. MCCARRON, Swartz Campbell LLC, of Philadelphia, Pennsylvania, argued for movant-appellant. With him on the brief was CANDIDUS K. DOUGHERTY.

———————————

Before PROST, BRYSON[*], and WALLACH, *Circuit Judges*.

PROST, *Circuit Judge*.

This is the second time this court has entertained appeals in this long-running litigation relating to the failure of Meritor Savings Bank ("Meritor"). Meritor failed in 1992 after the Federal Deposit Insurance Corporation ("FDIC") breached a capital agreement with Meritor. We previously affirmed a decision of the United States Court of Federal Claims finding that the government was liable for the FDIC's breach of contract, and awarding $276 million in "lost value" damages. *Slattery v. United States*, 583 F.3d 800, 815-18 (Fed. Cir. 2009) ("*Slattery I*"), *vacated and reh'g en banc granted*, 369 F. App'x 142 (Fed. Cir.

———————————

[*] Circuit Judge Bryson assumed senior status on January 7, 2013.

2010), *reinstated as modified on reh'g en banc*, 635 F.3d 1298 (Fed. Cir. 2011) (en banc).  On remand, the Court of Federal Claims dealt with two distinct questions raised by two distinct parties.  First, applying 12 U.S.C. § 1821(d)(11)—the statute governing the distribution of a receivership surplus by the FDIC acting in its capacity as a receiver ("FDIC-R")—the court held that current Meritor shareholders are the proper recipients of the $276 million award.  *Slattery v. United States*, 102 Fed. Cl. 27, 29-30 (2011) ("*Slattery II*"); *see also Slattery v. United States*, No. 93-CV-280 (Fed. Cl. Dec. 15, 2011) (Final Order) ("*Slattery III*").  Second, the court denied a motion to intervene filed by John R. McCarron, a former Meritor employee, on the grounds of lack of subject matter jurisdiction and issue and claim preclusion.  *Slattery II*, 102 Fed. Cl. at 30-31.

Intervenors Steven Roth and Interstate Properties (collectively "Roth")—former shareholders who owned shares of Meritor at the time of its failure but later sold their shares—appeal from an order of the Court of Federal Claims directing the FDIC-R to distribute the receivership surplus to current shareholders.  Mr. McCarron appeals the Court of Federal Claims' denial of his motion to intervene.  The primary issues raised on appeal are whether the Court of Federal Claims properly: (1) construed 12 U.S.C. § 1821(d)(11) as requiring distribution of the receivership surplus to current shareholders, instead of to former shareholders like Roth; and (2) denied Mr. McCarron's motion to intervene.  For the reasons that follow, we affirm.

BACKGROUND

A. MERITOR'S FAILURE

In 1982, the FDIC sought to save a failing Pennsylvania bank, the Western Savings Society of Philadelphia ("Western"), through merger with a solvent bank.  Meri-

tor[1] and the FDIC agreed that Meritor would merge with Western.[2] To facilitate the merger, the FDIC agreed that Meritor could treat as "goodwill" the difference between the assets and liabilities Meritor assumed from Western and that Meritor could use this goodwill as a capital asset for purposes of meeting the FDIC's capital requirements for banks. In 1988, the FDIC breached this capital-related agreement by no longer recognizing the goodwill resulting from the Western acquisition as capital on Meritor's books. As a result, Meritor no longer satisfied the FDIC's capital requirements. Meritor later failed and, on December 11, 1992, the Pennsylvania Secretary of Banking took possession of Meritor and appointed the FDIC as receiver.

At the time of Meritor's failure and seizure in December 1992, Roth owned more than 1.7 million shares of Meritor stock. In September 1993, however, Roth sold his shares for $0.03 per share, receiving a total of approximately $51,000.

## B. ROTH'S CLAIM

In 1993, Frank Slattery, an owner of Meritor stock, filed suit in the Court of Federal Claims, asserting a shareholder derivative action on behalf of Meritor for breach of contract by the FDIC, as well as a class action on behalf of Meritor's shareholders at the time Meritor was put into receivership. In 1996, Mr. Slattery—citing the fact that a market for Meritor stock had developed and some shareholders had sold their stock—amended the

---

[1] Until 1986, Meritor was named the Philadelphia Savings Fund Society. For simplicity, the name "Meritor" is used throughout.

[2] Additional background facts and procedural history are detailed in our prior opinion in *Slattery I*. *See, e.g.*, *Slattery I*, 583 F.3d at 804-07, 812-13, 816, 825-27.

complaint to redefine the putative class as consisting of shareholders of Meritor as of the date of judgment in the case, not at the time of seizure.

In light of Mr. Slattery's amendment to the complaint, Roth sought leave to intervene in the proceedings, which the Court of Federal Claims granted. Roth alleged that as a Meritor shareholder at the time it went into receivership, he was entitled to a portion of any receivership surplus under 12 U.S.C. § 1821. He asserted claims against the FDIC-R based on its failure to distribute to Roth his portion of the receivership surplus. However, the court postponed consideration of Roth's claims until after a final determination of Mr. Slattery's claims.

The Court of Federal Claims ultimately dismissed Mr. Slattery's class action but allowed him to pursue his shareholder derivative action for breach of contract. Mr. Slattery prevailed on the derivative claim, and the Court of Federal Claims awarded approximately $372 million in damages. As for Roth, the Court of Federal Claims dismissed his complaint, ruling that it lacked jurisdiction to hear his claims because the FDIC, in its capacity as receiver, is not "the United States" and therefore cannot be sued under the Tucker Act.

On appeal, this court affirmed the Court of Federal Claims' finding that the government was liable for the FDIC's breach of contract. *Slattery I*, 583 F.3d at 815-16. We also affirmed, in part, the damages award, allowing $276 million in "lost value" damages based on Meritor's market valuation immediately before the FDIC's breach, on the theory that the breach initiated a chain of events leading to the bank's seizure and the loss of all shareholder value. *Id.* at 817-18. With respect to Roth, we reversed the Court of Federal Claims' dismissal of his claims on jurisdictional grounds, although "[w]e express[ed] no opinion on the merits of [his] claims." *Id.* at 829. We remanded the case to the Court of Federal Claims for

further proceedings, including consideration of Roth's claims relating to the receivership surplus. *Id.*

On remand, Mr. Slattery moved for a partial final judgment against the government for the $276 million damages award affirmed on appeal, and for an order directing the FDIC-R to distribute the award to Meritor's current shareholders immediately, while reserving a portion pending the outcome of Roth's claims. Roth filed a cross-motion, requesting that the Court of Federal Claims order the FDIC-R to distribute the $276 million award to former shareholders like him who owned shares of Meritor at the time of its seizure in December 1992. The government opposed Roth's motion, contending that 12 U.S.C. § 1821(d)(11) requires that any receivership surplus be distributed to current Meritor shareholders.

On November 18, 2011, the Court of Federal Claims held that Meritor's current shareholders are the proper recipients of Meritor's receivership surplus, and that former shareholders who sold their shares relinquished their right to claim any benefit from the litigation. *Slattery II*, 102 Fed. Cl. at 29-30. Accordingly, on December 1, 2011, the court dismissed Roth's Second Amended Complaint. *Slattery v. United States*, No. 93-CV-280 (Fed. Cl. Dec. 1, 2011) (order dismissing Roth's Second Amended Complaint). Then, in a Final Order dated December 15, 2011, the Court of Federal Claims ordered the government to pay $276 million to the FDIC-R. *Slattery III*, slip op. at 1. In addition, it ordered the FDIC-R to use the $276 million to pay certain litigation costs and attorneys' fees, and then to distribute the remaining money to Meritor's current shareholders, except for $7,626,387.60, which was to be set aside in an escrow account and paid to Roth in the event he succeeded in this appeal. *Id.* at 1-

3.[3]  The court entered final judgment on December 28, 2011.

### C. MCCARRON'S CLAIM

John McCarron was a Meritor employee at the time the bank went into receivership in 1992. Mr. McCarron claims entitlement to share in this litigation's proceeds based on a "Severance Compensation Agreement" and an "employment agreement" he had with Meritor. Mr. McCarron alleges that under his Severance Compensation Agreement, he is owed two times his annual compensation, equal to $676,410. He also alleges that his employment agreement granted him options to purchase 100,000 shares of Meritor stock for one dollar per share. Thus, Mr. McCarron claims he is entitled to 100,000 times the difference between the amount of any per share distribution to shareholders and one dollar.

Mr. McCarron previously litigated against the FDIC-R in the Eastern District of Pennsylvania and the Third Circuit in the early- to mid-1990s. *See McCarron*, 111 F.3d 1089 (3d Cir. 1997). Among other things, Mr. McCarron claimed entitlement to "twice his annual salary" under his "Severance Compensation Agreement." *Id.* at 1092. The Third Circuit permitted Mr. McCarron's suit to proceed for vested pension benefits under an unrelated retirement plan. *See id.* at 1098. However, relevant to the present litigation, the Third Circuit affirmed the district court's dismissal of Mr. McCarron's claim based on his Severance Compensation Agreement, concluding that after Meritor was placed into receivership, "McCar-

---

[3]  The Court of Federal Claims' order provides that if Roth is denied recovery, the funds in escrow will be distributed to the "Depository Trust Corporation" for pro rata distribution to current Meritor shareholders who own their shares through the Depository Trust Corporation. *Id.* at 3.

ron's Severance Compensation Agreement was properly repudiated" by the FDIC-R. *Id.* at 1095.

In September 1996, while Mr. McCarron's appeal was pending before the Third Circuit, he filed a motion to intervene in this litigation. In 2006, Mr. McCarron filed a supplemental memorandum in support of his motion to intervene, and the Court of Federal Claims denied his motion. Mr. McCarron never appealed that decision.

In September 2011, after this court ruled on the prior appeal and remanded the case to the Court of Federal Claims, Mr. McCarron filed a second motion to intervene. Mr. McCarron attached a complaint in which he asserted a claim to a share of this litigation's proceeds based on his Severance Compensation Agreement and employment agreement, as discussed above.

The Court of Federal Claims denied Mr. McCarron's second motion to intervene in its November 18, 2011 Order and Opinion. *See Slattery II*, 102 Fed. Cl. at 30-31. The court held that the motion should be denied for at least three independent reasons. First, the court determined that "McCarron's claim is directed against Meritor and the Receiver rather than the Government," and therefore the court lacked jurisdiction under the Tucker Act to hear Mr. McCarron's claim. *Id.* at 31. Second, the court determined that Mr. McCarron's claim was barred by res judicata or claim preclusion because "McCarron previously asserted the same claim in district court," resulting in a final judgment affirmed by the Third Circuit. *Id.* (citing *McCarron*, 111 F.3d at 1092). Third, and finally, the court determined that Mr. McCarron's motion was barred by issue preclusion because, by failing to appeal the court's denial of his first motion to intervene, "McCarron did not preserve the issue and cannot raise it again now." *Id.*

## D.  APPEAL

Roth appealed the Court of Federal Claims' November 18, 2011 Opinion and Order, December 1, 2011 Order, and December 15, 2011 Final Order.  Mr. McCarron appealed the Court of Federal Claims' November 18, 2011 Opinion and Order and December 28, 2011 Judgment. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

## A.  ROTH'S APPEAL

Roth raises three principal issues on appeal.  First and foremost, Roth argues that the Court of Federal Claims incorrectly construed 12 U.S.C. § 1821(d)(11) as requiring distribution of a receivership surplus to current Meritor shareholders, instead of to shareholders at the time Meritor went into receivership.  Second, Roth appeals the Court of Federal Claims' dismissal of his Second Amended Complaint.  Third and finally, Roth contends that the Court of Federal Claims exceeded its jurisdiction in entering an order purporting to limit the government's liability for claims by potential future plaintiffs who were not parties to this litigation.  We address each issue in turn.

1

The FDIC-R's distribution of a receivership surplus is governed by 12 U.S.C. § 1821(d)(11).  The version of the statute that was in effect at the time the FDIC was appointed as receiver for Meritor, and which is controlling in this case, provided:

> In any case in which funds remain after all depositors, creditors, other claimants, and administrative expenses are paid, the receiver shall distribute such funds *to the depository institution's shareholders* or members together with the accounting report required under paragraph (15)(B).

12 U.S.C. § 1821(d)(11)(B) (emphasis added).[4]

The primary issue raised in Roth's appeal is the meaning of "shareholders" in § 1821(d)(11), and whether the word refers to Meritor shareholders at the time of the final judgment in this litigation (i.e., "current shareholders") or to shareholders at the time Meritor was seized and placed into receivership. Roth owned 1.7 million shares of Meritor at the time of Meritor's seizure in December 1992, but he sold those shares in September 1993. The meaning of "shareholders" therefore dictates whether Roth is entitled to receive a portion of the $276 million receivership surplus. The Court of Federal Claims held that § 1821(d)(11) refers to current shareholders, and thus that current shareholders—not former shareholders like Roth—are the proper recipients of the receivership surplus. *Slattery II*, 102 Fed. Cl. at 29-31. We review questions of statutory interpretation such as this de novo. *Mudge v. United States*, 308 F.3d 1220, 1224 (Fed. Cir. 2002).

As an initial matter, we note that the Court of Federal Claims erroneously applied the current version of § 1821(d)(11). *See Slattery II*, 102 Fed. Cl. at 29. The current version of the statute was enacted on August 10, 1993, and applies only "with respect to insured depository institutions for which a receiver is appointed *after* the date of the enactment." Omnibus Budget Reconciliation

---

[4] The version of the statute in effect at the time the FDIC was appointed as receiver for Meritor was enacted on August 9, 1989 as part of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989. Pub. L. 101-73, 103 Stat. 183 (1989); *see also* Federal Deposit Insurance Corporation Improvement Act of 1991, Pub. L. 102-242, § 161(a)(2), 105 Stat. 2236 (1991) (amending § 1821(d)(11)(B) by striking the original reference to paragraph "(14)(C)" and inserting "(15)(B)").

Act of 1993, Pub. L. 103-66, § 3001(c), 107 Stat. 312 (1993) (emphasis added). Because the FDIC was appointed as Meritor's receiver in December 1992, the pre-1993 version of the statute controls, and it was error for the Court of Federal Claims to apply the current version of the statute. Nevertheless, we do not find this to be reversible error because, as discussed below, we reach the same conclusion as the Court of Federal Claims based on our de novo review of the pre-1993 version of the statute.[5]

Roth argues that the plain meaning of § 1821 expresses the clear intent of Congress to give the shareholders of Meritor at the time of seizure the right to receive proportionate shares of any receivership surplus. Roth points to another provision of § 1821(d), which provides that when the FDIC is appointed as a receiver for a seized depository institution, it succeeds to "all rights, titles, powers, and privileges of the insured depository institution, and of any *stockholder*, member, accountholder, depositor, officer, or director of such institution with respect to the institution and the assets of the institution." 12 U.S.C. § 1821(d)(2)(A)(i) (emphasis added). According to Roth, this means the rights of Meritor's shareholders were "fixed" as of December 11, 1992—the date Meritor went into receivership—and that subsequent trading of shares in Meritor's corporate shell could not confer upon purchasers any rights relating to matters regulated by statute, such as distribution of a receivership surplus. Roth further notes that § 1821(d)(11) requires the FDIC-R to distribute any receivership surplus "to the *depository institution's* shareholders." Roth asserts that

---

[5] We note that the version of § 1821(d)(11) we are tasked with construing was in effect only from August 9, 1989 to August 10, 1993. Because the version of the statute enacted in 1993 does not govern this case, we express no opinion on whether the Court of Federal Claims properly construed the statute.

Meritor ceased to operate as a "depository institution" when it went into receivership.[6] Thus, according to Roth, he was a shareholder of Meritor up through the final moment that it functioned as a "depository institution," and he therefore falls within the group of shareholders who should benefit from the receivership surplus. Similarly, Roth argues that those who purchased shares of Meritor after it went into receivership were never shareholders of a "depository institution," and thus they have no claim under § 1821(d)(11). In addition, Roth argues that the Court of Federal Claims' interpretation "would divorce the infliction of harm from the entitlement to recovery and lead to a bizarre outcome in which the shareholders of Meritor who were injured by the Government receive no compensation, while post-seizure speculators who were never injured are compensated." Roth's Appeal Br. 21.

The government responds that the plain text of the statute requires distribution of any receivership surplus to current Meritor shareholders. The government invokes the temporal aspect of § 1821(d)(11), noting that the statute provides that "*after*" the FDIC-R pays all other claims and expenses, it shall distribute any remaining surplus to the depository institution's shareholders. Thus, according to the government, Congress clearly was referring to those who hold shares at the time of the distribution, and not to those like Roth who are no longer shareholders. The government also contends that Roth's other arguments are completely unsupported by the text

---

[6] Roth equates "depository institution" with an institution "engaged in the business of receiving deposits," citing 12 U.S.C. § 1813(a)(2)(A). However, § 1813(a)(2) sets forth the definition of the term "State bank," not "depository institution." The term "depository institution" is defined elsewhere in § 1813 as simply "any bank or savings association." 12 U.S.C. § 1813(c)(1).

of § 1821(d).  For example, in response to Roth's argument that Meritor ceased to operate as a "depository institution" when it went into receivership, the government argues that all outstanding shares of Meritor are shares in a depository institution because they were issued by Meritor—a depository institution—and that nothing in the statute dictates that a depository institution's shares cease to be shares in a depository institution if the institution enters receivership and stops accepting deposits. As for Roth's argument that § 1821(d)(2)(A)(i) "fixed" the rights of shareholders at the time of the receivership's creation, the government argues that this section permits the receiver to control and resolve the failed bank, but says nothing about the distribution of any surplus to the institution's shareholders, which is governed instead by § 1821(d)(11).

We agree with the government that under § 1821(d)(11), current Meritor shareholders are the proper recipients of the receivership surplus.  The statute directs the FDIC to distribute a receivership surplus to a "depository institution's shareholders," without any further qualifications.  Because the existence and amount of any surplus is determined following the payment of claims and administrative expenses remaining at the time of the distribution, it is logical to interpret the parallel reference to "the depository institution's shareholders" to mean those who are shareholders at the time of the distribution as well.  If Congress had intended to require distributions to former shareholders, it easily could have included language to that effect.

We are not persuaded by Roth's other arguments. Roth contends that § 1821(d)(2) "fixed" the rights of shareholders at the time Meritor went into receivership. However, § 1821(d)(2), which is titled "[g]eneral powers," grants the FDIC-R the "rights, titles, powers, and privileges" of shareholders, depositors, and others "with respect to the institution and the assets of the institution"

so that it can operate the bank and perhaps use the bank's assets to form a new bank. It does not strip away the private property of those listed in the statute. For example, it does not deprive depositors of their deposits, nor does it strip shareholders of their shares. *Cf. Pareto v. FDIC*, 139 F.3d 969, 700-01 (9th Cir. 1998) (finding that the grant of shareholder rights under subsection (d)(11) is not subsumed by, or coextensive with, rights transferred pursuant to subsection (d)(2)(A)(i)).

Roth also reads too much into § 1821(d)(11)'s reference to a "*depository institution's* shareholders." Roth seems to think Meritor's shares ceased to be shares in a depository institution the moment Meritor went into receivership and stopped accepting deposits. We think it more likely that Congress used the term "depository institution"—which it defined as "any bank or savings association," 12 U.S.C. § 1813(c)(1)—throughout the statute simply for the sake of convenience and clarity. If, instead of "depository institution's shareholders," Congress had used the phrase "bank's shareholders," we doubt there would be any question that post-receivership purchasers of shares would qualify as shareholders for purposes of § 1821(d)(11). Therefore, we reject Roth's contentions that he could not transfer his right to a receivership surplus, and that people who purchased shares after Meritor went into receivership are not shareholders in a "depository institution" for purposes of § 1821(d)(11).

Nor are we persuaded by Roth's argument that the government's interpretation leads to a "bizarre outcome" that divorces the infliction of harm by the government from the entitlement to recovery. Roth easily could have avoided this "bizarre outcome" if he had simply held onto his shares. In addition, when Roth sold his shares, the $51,000 he received in exchange presumably represented the fair market value of those shares as of September 1993, including the possibility (perhaps viewed as remote at the time) that this lawsuit would result in a large

damages award to be distributed to shareholders. Roth's decision to sell his shares turns out to have been a costly one, but one that is inherent in decisions about buying and selling shares of stock.

We have considered Roth's remaining arguments regarding § 1821(d)(11) and find them unpersuasive. Accordingly, we affirm the Court of Federal Claims' holding that current Meritor shareholders are the proper recipients of the receivership surplus.

2

After the Court of Federal Claims determined that current shareholders are the proper recipients of the receivership surplus under § 1821(d)(11), it dismissed Roth's Second Amended Complaint. *See Slattery v. United States*, No. 93-CV-280 (Fed. Cl. Dec. 1, 2011) (order dismissing Roth's Second Amended Complaint). Roth's complaint set forth his "claims-in-intervention," which sought to enforce his purported right to a pro rata share of the receivership surplus "both under 12 U.S.C. § 1821(d)(11) and the takings clause of the Fifth Amendment." Roth's Appeal Br. 27. The basis for Roth's takings claim is the alleged "failure by the FDIC to distribute a surplus to its proper recipients" under § 1821(d)(11). *Id.* (citing *Slattery I*, 583 F.3d at 826-29, and *First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279, 1283 (Fed. Cir. 1999)).

Roth appeals the dismissal of his claims-in-intervention. However, as previously discussed, Roth has no rights to the receivership surplus under § 1821(d)(11), so his claim under § 1821(d)(11) must fail. Likewise, because Roth is not a "proper recipient" under § 1821(d)(11), he has no "property interest" that could provide a basis for a takings claim. Accordingly, we affirm the Court of Federal Claims' dismissal of Roth's Second Amended Complaint.

3

Finally, Roth challenges the following limitation of liability in the Court of Federal Claims' December 15, 2011 Final Order:

> 6.   Because the United States and FDIC in its corporate capacity shall not, under any circumstance, be liable in excess of the $276 million awarded under this Final Order, upon payment of the $276 million to the Receiver for further distribution as set forth in this Order, the United States and FDIC in its corporate capacity shall be and are hereby discharged and released from any liability to Plaintiffs arising from or relating to this action, and from any further obligation or liability arising from or relating to: (1) the breach of contract found by this Court: (2) the Meritor receivership; (3) payment of the judgment by Defendant to the Receiver prior to final adjudication of any appeal by the Intervenors, or (4) any distribution by the Receiver, including but not limited to the general procedures outlined and approved in this Order.

*Slattery III*, slip op. at 4.   On appeal, Roth asserts that this limitation of liability improperly purports to adjudicate potential claims of other shareholders who are not parties to the litigation.   Roth therefore contends that by entering this limitation of liability, the Court of Federal Claims exceeded its jurisdictional authority.

The government responds that Roth lacks standing to challenge the limitation of liability because his challenge raises purported rights of *other* former shareholders.   The government also contends that Roth's argument is moot because more than ninety-five percent of the $276 million judgment has already been distributed to current Meritor shareholders, so this court could not effectively provide relief to other potential claimants.   In addition to the

government's arguments, Mr. Slattery argues that the jurisdictional issue is not yet ripe.

It is undisputed that Roth will not be affected by the Court of Federal Claims' limitation of liability. By intervening in this lawsuit, he has had an opportunity to litigate his claims. And his potential interests were fully protected by the order requiring the FDIC-R to set aside more than $7.6 million in an escrow account to be paid in the event he were to prevail on appeal. Thus, we see no reason to reverse or vacate the Final Order, which it appears is the relief Roth seeks.

Nevertheless, we are somewhat concerned by the breadth of the Final Order's limitation of liability, and the possibility that it could be interpreted as having preclusive effect on potential future claimants who were not parties to this litigation. We note, therefore, that in the perhaps unlikely event that non-parties bring future claims relating to the subject matter of this lawsuit, traditional principles of claim and issue preclusion should apply. Of course, any claims that have not already been brought during the twenty-year pendency of this lawsuit may be untimely or barred on other grounds.

## B. MCCARRON'S APPEAL

As previously discussed, Mr. McCarron filed a motion to intervene in this lawsuit in 1996, which the Court of Federal Claims denied in 2006. Mr. McCarron never appealed the denial of that motion. In 2011, after the case had been returned to the Court of Federal Claims on remand from this court, Mr. McCarron filed a second motion to intervene. The Court of Federal Claims denied the second motion on three separate grounds, finding that: (1) the court lacked jurisdiction under the Tucker Act to hear Mr. McCarron's claim because it is directed against Meritor and the FDIC in its capacity as receiver, rather than against the United States; (2) Mr. McCarron's claim was barred by res judicata as a result of his prior

litigation against the FDIC in the Eastern District of Pennsylvania and the Third Circuit; and (3) Mr. McCarron's second motion to intervene was barred by issue preclusion because he failed to appeal the denial of his first motion. *Slattery II*, 102 Fed. Cl. at 30-31.

Mr. McCarron appeals the Court of Federal Claims' denial of his second motion to intervene, challenging all three of the court's reasons for denying the motion. We need only address the issue of res judicata to affirm.

Under the doctrine of res judicata or claim preclusion, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981). Res judicata precludes a party from bringing a claim in a second lawsuit where "(1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first." *Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed. Cir. 2003).

Mr. McCarron argues that his prior litigation against the FDIC in the Eastern District of Pennsylvania and the Third Circuit does not have preclusive effect because the receivership has since been found to be improper:

> McCarron was denied relief [in his prior litigation] because the employment contract was repudiated through operation of the receivership. [*McCarron*, 111 F.3d at] 1095. *The receivership has since been adjudicated as improper* and damages assessed against the Government. *Slattery v. United States*, 53 Fed. Cl. 258 (Fed. Cl. 2002); *Slattery v. United States*, 583 F.3d 800, 825 (Fed. Cir. 2010). Since the receivership was improper, the repudiation of McCarron's employment contract was also improper, and McCarron is therefore entitled to payment as a creditor of Meritor.

McCarron's Appeal Br. 26 (emphasis added).

Mr. McCarron's argument fails because it rests on the flawed premise that Meritor's receivership has been adjudicated as improper. It is true that the FDIC has been found liable for breaching its capital agreement with Meritor, and that the FDIC's breach led to Meritor being put into receivership. *See Slattery I*, 583 F.3d at 815-16, 825. It is not true, however, that the receivership itself has been adjudicated as improper. Mr. McCarron cites no support for the proposition that the FDIC's breach of contract renders invalid all of the subsequent actions of the FDIC, acting in its capacity as Meritor's receiver. There is no reason to conclude that the FDIC-R's repudiation of Mr. McCarron's employment contract was improper. Accordingly, we affirm the Court of Federal Claims' denial of Mr. McCarron's motion to intervene.

## CONCLUSION

In view of the foregoing, the judgment of the Court of Federal Claims is affirmed.

## **AFFIRMED**